IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOE,                              :
                                       :
    Plaintiff,                   :        Civil Action
                                       :
vs.                                    :        No. 4:02-CV-0369
                                       :
PENNSYLVANIA STATE                     :        Judge Jones
UNIVERSITY,                            :
                                       :
    Defendant.                   :

FILED
WILLIAMSPORT, PA

AUG 1 9 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY DIRECTED TO DEFENDANT PENNSYLVANIA STATE UNIVERSITY

I.    INTRODUCTION

Plaintiff Jane Doe seeks an Order from this Court compelling Defendant

Pennsylvania State University (Penn State) to respond fully to her discovery

requests regarding how Penn State handles other cases that, like this one, involve

harassment of students or criminal activity.  The essence of Plaintiff's claim in this

case is that she was sexually assaulted by two other students and, after she reported

that assault, was mercilessly harassed by the students and their friends while Penn

State stood by, deliberately indifferent to the harassment about which she informed

the school.[1]  As a result, she was forced to withdraw from school.

Seeking discovery in support of her claim that Penn State was deliberately

indifferent, Plaintiff has sought information from Penn State concerning how it

handled other cases of student harassment and criminal activity.  This information

is relevant to show that Penn State can and does respond to such situations with

protective measures that it failed to offer or employ in Jane Doe's case.  Plainly, if

Jane Doe can show that Penn State was aware of and used effective methods to

respond to harassment in other cases yet failed to use them in this one, that

evidence would support an inference by a finder of fact that Penn State had shown

deliberate indifference in Jane Doe's case.

Penn State has so far objected to these discovery requests as overbroad and

unduly burdensome.  Because Penn State has not and cannot show an undue

burden and because the relevance and importance of the information sought

outweighs any actual burden imposed on Penn State, this Court should order Penn

State to provide a complete response to the interrogatories and to produce the

documents requested.

---

[1] Deliberate indifference and notice are elements of Plaintiff's claim under Title
IX.  *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999).

## II.    PROCEDURAL HISTORY

Plaintiff filed her Complaint on March 6, 2002.  Discovery began on March 25, 2002, with Defendant's first set of interrogatories and requests for documents. Plaintiff served her first set on May 3, 2002.  *See* Exhibit A.  Plaintiff agreed to Defendant's request for an additional two weeks to respond, and Defendant responded on June 19, 2002.  *See* Exhibit B.  Following a review of Defendant's responses, Plaintiff sent a letter to Defendant on July 3, 2002, outlining several deficiencies in Penn State's response.  *See* Exhibit C.  Defendant addressed most of the deficiencies in a July 17, 2002 letter, *see* Exhibit D, and its July 29, 2002, supplemental responses.[2]  *See* Exhibit E.  However, not all of the deficiencies were satisfactorily addressed,[3] and as a result, Plaintiff is compelled to file this Motion with the Court.

---

[2] Defendant sent a second set of documents after Plaintiff sought and this Court issued on July 2, 2002, an order allowing Defendant to release student records under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g.

[3] By filing this Motion, Plaintiff does not waive her right to challenge Defendant's objections or incomplete answers with respect to other interrogatories and requests for document production.  Instead, Plaintiff intends to elicit through depositions and further communications some of the information Plaintiff has identified as missing from Defendant's responses.  Plaintiff does not believe that the dispute that is the subject of this Motion and Memorandum is resolvable without immediate Court intervention.

III.   STATEMENT OF FACTS

Jane Doe was a first-year student at Penn State when she was sexually assaulted by two other Penn State students in an off-campus apartment.  After Jane Doe reported the assault to the police, the student attackers and their friends instituted an extensive campaign of harassment and intimidation that included, among other things, harassing phone calls, threatening stares, and derogatory name-calling.  Jane Doe repeatedly complained to Penn State about this harassment, but the University took no meaningful action to protect Jane Doe from the harassment.  Penn State ordered the assailants to have no contact with Jane Doe and to refrain from harassing her directly or through others, but the harassment continued.  Penn State took no further action against the harassers, nor did it take adequate steps to protect Jane Doe.  Fearing for her safety, Jane Doe withdrew from school.

Jane Doe sued Penn State alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, breach of implied contract, and breach of fiduciary duty.[4]  In the course of the discovery proceedings detailed above in the

---

[4] Plaintiff intends to amend her complaint to include a claim of negligence. Defendant has refused consent for filing the Second Amended Complaint, even though it contains only this added cause of action and no new facts.  Accordingly, Plaintiff intends to file with this Court a motion for leave to file her Second Amended Complaint.

procedural history section of this memorandum, Plaintiff requested from

Defendant responses to the following interrogatories:

10.   If Penn State has received any complaint of sexual or other harassment from a student, faculty member, employee, or other person, other than complaints made by Plaintiff, separately with respect to each of the complaints within the scope of the description in that interrogatory, state the following:

a.   The name of the complaining party and whether the complaining party was a student, faculty member, employee, or other person (and if an "other person" state the relationship of that person to Penn State).

b.   The nature of the harassment complained of.

c.   The date(s) when the complaint was received by Penn State.

d.   The person(s) at Penn State who received the complaint(s).

e.   The person(s) at Penn State responsible for investigating the complaint(s).

f.   The person at Penn State responsible for acting upon or taking steps to remedy the complaint(s).

g.   All steps taken to protect the complaining party from any further or continuing harassment.

h.   All steps considered but not taken or implemented for the purpose of protecting the complaining party against further harassment and the reasons such steps were not taken.

i.   All steps taken to discipline or punish the harasser.

11.   Have you ever taken any of the following steps after receiving a complaint of sexual or other harassment from a student, faculty member, employee, or other person (state yes or no separately for each step listed below, and if yes, identify the complaining parties, alleged harasser, and nature of the harassment complained of):

a.   Suspended the alleged harasser from employment with Penn State or attendance at Penn State as a student.

b.   Excluded the alleged harasser from any part or all of a Penn State campus.

c.   Provided a non-student escort to accompany the complaining party to class, work, or university facilities.

d.   Restricted or monitored the alleged harasser's movement on campus.

e.   Required the alleged harasser to attend counseling on sexual harassment.

f.   Informed the alleged harasser as to what conduct is appropriate.

g.   Prohibited retaliation for reporting the alleged sexual harassment.

12.   If you are aware of any case in which a person accused of sexual or other harassment was ordered by Penn State to have no further contact with the complaining party for some period of time and subsequently had such contact, directly or indirectly, in violation of Penn State's instructions not to do so, then separately as to each such case known to you state the following information:

a.   The identity of the complaining party.

b.   The identity of the alleged harasser.

c.   The nature of the harassment complained of.

d.   The date the complaint was received.

e.   The date the alleged harasser was instructed to cease further contact with the complaining party.

f.   When and how Penn State learned that its instruction to cease further contact had been disobeyed.

g.   What steps Penn State took in light of the violation of its instruction, and the reasons for those steps.

13.   If you are aware of any case in which a Penn State student has been subject to criminal charges and bound over in a preliminary hearing, then separately as to each such case known to you state the following information:

a.   The identity of the student charged.

b.   The nature of the criminal charges.

c.   The date of the alleged criminal incident and preliminary hearing.

d.   Any discipline imposed by Penn State as a result of the alleged criminal incident.

e.   If no disciplinary action was taken by Penn State, the reason why.

f.   The date of the disciplinary action taken by Penn State.

g.   Whether some or all of the discipline was imposed prior to the disposition of the criminal charges, and if so, which disciplinary actions were taken prior to such disposition.

      h.     Whether some or all of the discipline was deferred until prior to the disposition of the criminal charges, and if so, which disciplinary actions were deferred and why.

      i.     The process, if any, leading up to the discipline imposed by Penn State.

      j.     Whether the accuser or victim in the criminal case testified before a Penn State disciplinary body or gave information about the criminal incident in a Penn State investigation prior to the disposition of the criminal charges.

Document request items 5, 6, and 7 sought documents related to these interrogatories, as follows:

    5.     All documents that relate, refer, or pertain to Penn State's investigation or handling of any of the complaints of harassment that are the subject of interrogatory numbers 10, 11, and 12 in Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

    6.     All documents that relate, refer, or pertain to the student criminal cases which are the subject of interrogatory number 13 in Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

    7.     All documents that relate, refer, or pertain to your analysis or consideration of any actions that were or might be taken in any case involving a complaint of sexual or other harassment to protect the complaining party from such harassment.

Penn State objected to these interrogatories and document requests as overbroad and unduly burdensome.  Defendant claimed that the requests were overbroad because they extended over a ten-year period[5] and encompassed harassment other than sexual harassment.  Defendant claimed that the requests

were unduly burdensome because the effort required to search through the student

disciplinary records and the other students' privacy interests outweighed any

potential relevance of the information. *See* Exhibit B. Plaintiff responded with a

letter suggesting ways in which Defendant can quickly scan its files to determine

which involve harassment and then redact private information in accordance with

the confidentiality agreement entered into by the parties at the outset of this

litigation. *See* Exhibit C; Exhibit F (Confidentiality Agreement). Defendant's

response rejected all of Plaintiff's suggestions for compliance, insisted that the

Office of Judicial Affairs' files were not organized in a manner that allows for a

quick scan of the information (though Penn State provided no specific facts

concerning the format of the records to support that assertion), and claimed that the

Office did not have the personnel to conduct any such scan.[6] Defendant offered to

have a paralegal conduct the investigation at a charge of $75 per hour billed to

Plaintiff. *See* Exhibit D.

---

[5] Plaintiff originally asked for documents over a ten-year period but, after receiving
Defendant's objection, offered to limit her request to the period beginning in 1998.

[6] In its initial response to Plaintiff's requests, Defendant raised privacy-based
objections as well as objections based on overbreadth and undue burden; however,
in its letter responding to Plaintiff's letter detailing the deficiencies with
Defendant's initial response, Defendant fails to mention the privacy objection and
seems to acknowledge that redaction would be appropriate. Thus, it appears that
Defendant has abandoned its privacy-based objections to the contested
interrogatories and document production requests.

## IV.   STATEMENT OF QUESTION INVOLVED

Is information regarding other cases of student harassment and criminal conduct both relevant and not unduly burdensome in a case involving one student complaining that Penn State was deliberately indifferent to her complaints of harassment and criminal activity by other students?

## V.   ARGUMENT

The contested interrogatories and document production requests seek important and highly relevant information to support Plaintiff's allegations that Defendant was deliberately indifferent to her claims of sexual harassment. Neither of Defendant's objections to these requests justifies Defendant's wholesale refusal to produce any of the requested information or documents.

Federal Rule of Civil Procedure 26(b)(1) defines the proper scope of discovery as "any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Rule 26 is broad in scope and is intended to be liberally construed to allow both parties to obtain information essential to proper litigation on all facts. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609,

631 (M.D. Pa. 1997); *Gillen v. Nissan Motor Corp.*, 156 F.R.D. 120, 121 (E.D. Pa. 1994).

One of the central elements of Plaintiff's Title IX claim is that Penn State was deliberately indifferent to her complaints of sexual harassment. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 633 (1999). Plaintiff intends to demonstrate Penn State's deliberate indifference in a variety of ways, such as (but not limited to) showing that Penn State did not follow through on promises it made to her about her safety; that, once its initial actions on Jane Doe's behalf proved ineffective, it did not try further remedies that it had used in other cases and that it knew were effective; and that Penn State knew of and had at its disposal remedies that it did not offer to or even consider for Plaintiff. The contested interrogatories and document production requests will likely provide information about this last possibility as they are likely to show that Defendant used methods that were effective in other, similar cases, but did not attempt those protections in Plaintiff's case.

Defendant claims that because Plaintiff sought information regarding harassment other than sexual harassment her interrogatories and requests are overbroad. That argument is nonsensical. Harassment is harassment, regardless of motivation, and generally can be protected against in the same ways. For example, Plaintiff has information suggesting that Penn State recently provided security for a

student who complained of race-based harassment in the form of a twenty-four hour body guard hired by Penn State. A rational factfinder might conclude that the same or similar measure could have been equally effective in protecting Jane Doe. Records from Penn State about this incident (and any other responses Penn State has taken to complaints of any type of harassment) therefore would be relevant to support Plaintiff's claims because they would show that Penn State can and does provide twenty-four hour security for its students who complain of harassment but did not provide, offer, or even consider such security for Plaintiff.

Records concerning other cases involving criminal charges or conduct also are relevant. Plaintiff has information to indicate that Penn State has in other cases suspended students almost immediately after they were arrested for criminal acts; again, Penn State refused to take that step in Jane Doe's case. *Id.* Information about such suspensions is highly relevant to Plaintiff's contention that Penn State was deliberately indifferent because information that Penn State can suspend (and has suspended) students after being arrested but before conviction, combined with the undisputed fact that Penn State refused to do so here, would permit a factfinder to conclude that Penn State was deliberately indifferent because it ignored Plaintiff's requests to suspend her assailants. That the criminal act in those other cases may be different than the criminal act in Plaintiff's case is immaterial to the

11

issue of what remedies are available to Penn State when a student commits a criminal act.

Defendant also claims that Plaintiff's requests are unduly burdensome because the Office of Judicial Affairs receives over 1500 complaints per year and has a non-computerized filing system with no systematic way of retrieving just harassment complaints or just complaints involving students who violate the criminal laws.

The number of documents responsive to the request is, of course, not dispositive; mere numbers of documents do not establish undue burden. *Rosenberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 297 (E.D. Pa. 1980); *Caruso v. The Coleman Company*, 157 F.R.D. 344, 349 (E.D. Pa. 1994) (*citing Baxter Travenol Laboratories, Inc. v. LeMay*, 93 F.R.D. 379 (S.D. Ohio 1981) (discovery was not burdensome where party alleged that it needed to review "thousands of documents" at a cost of "hundreds of man-hours")).  Defendants must prove that the requests are *egregiously* burdensome, *Rosenberg*, 85 F.R.D. at 297, but cannot do so here.

Penn State has given Plaintiff nothing to show – and has presented nothing in its blanket objections to show – that the review of these files in fact would be unduly burdensome.  As Plaintiff's counsel pointed out in their letter seeking compliance, the requests seek records that fit within certain specific objective

criteria. There is no reasonable basis to conclude that Penn State's paralegals would have to read every page and every word of every file on every complaint in order to determine whether the files were responsive to the request; rather, it appears obvious that a brief initial screening of the main or summary portion of each report would indicate whether it falls within the category sought, and then only the apparently responsive documents would require further review and production.[7] Equally important is the fact that Plaintiff agreed to limit significantly the burden on Defendant by sharply reducing the time period covered by the request, to cover only 1998 forward.

In any event, the cause of any significant burden imposed here is Penn State's own decision to maintain a non-computerized filing system, despite the volume of complaints received and the ready availability of computerized organizing tools. The "fact that an unwieldy record keeping system would require heavy expenditures of time and effort to produce requested documents, is not a sufficient reason to prevent disclosure of otherwise discoverable material." *Snowden v. Connaught Laboratories, Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("To allow a

---

[7] Neither would it be necessary to redact every document produced; the documents could be produced for inspection without redaction, subject to a strict confidentiality agreement, with only the copies ultimately requested by Plaintiff's counsel requiring redaction before that delivery.

defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules."). The state of Penn State's record-keeping system for its disciplinary files cannot thwart Plaintiff's legitimate discovery pursuits.

Defendant's suggestion that Plaintiff pay for a paralegal to search the files that are not systematically organized is contrary to case law and should be rejected. Courts generally "will not shift the burden of discovery onto the discovering party where the costliness of the discovery procedure involved is entirely a product of the defendant's record-keeping scheme over which the plaintiff has no control." *Delozier v. First Nat'l Bank of Gatlinburg*, 109 F.R.D. 161, 164 (E.D. Tenn. 1986). It is particularly inappropriate to shift a substantial cost of providing discovery to Plaintiff when she is a former student of limited means (and former because of Defendant's own inaction), unable even to afford counsel and represented on a pro bono basis, while Defendant is a large institution with a multimillion-dollar budget and access to top quality paid counsel and its support staff, including paralegals.

The only relevant inquiry here is whether the burden Defendant faces in responding to Plaintiff's requests is not outweighed by the importance of the information to Plaintiff. As detailed above, Plaintiff already has information to suggest that Defendant took protective steps in other cases that it eschewed in Jane

14

Doe's, including providing round-the-clock security for a student who complained of harassment and suspending students arrested for suspected violation of criminal laws.  Plaintiff is entitled to Penn State's documents regarding these instances and any others that exist.

VI.   CONCLUSION

For the reasons stated above, Plaintiff respectfully submits that this Court grant Plaintiff's Motion to Compel Discovery Directed at Defendant Pennsylvania State University.

Submitted,

Dated:  August 16, 2002

Terry L. Fromson
David S. Cohen
Women's Law Project
125 S. Ninth St.  Suite 300
Philadelphia, PA  19107
(215)928-9801

David F. Abernethy
Kimberly Coffina
Drinker Biddle & Reath
One Logan Square
18th & Cherry Streets
Philadelphia, PA  19103

*Attorneys for Plaintiff*

15

## Exhibits
## Table of Contents

A.   Plaintiff's First Set of Discovery Requests - Interrogatories and Requests for
     Document Production

B.   Defendant's Responses to Plaintiff's Discovery Requests

C.   Plaintiff's Letter Outlining Deficiencies With Defendant's Responses

D.   Defendant's Response to Plaintiff's Deficiency Letter

E.   Defendant's Supplemental Responses to Plaintiff's Discovery Requests

F.   Confidentiality Agreement

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOE,                        :
                                 :
     Plaintiff,                  :          Civil Action
                                 :
     vs.                         :          No. 4:02-CV-0369
                                 :
PENNSYLVANIA STATE               :          Judge McClure, Jr.
UNIVERSITY,                      :
                                 :
     Defendant.                  :


PLAINTIFF'S FIRST SET OF REQUESTS FOR DOCUMENT
PRODUCTION DIRECTED TO DEFENDANT


## INSTRUCTIONS

1.     These requests require the production of all documents that are
responsive in whole or in part to any request set forth herein.

2.     All documents called for by these requests must be produced in the
manner required by applicable rules, whether organized according to the specific
request to which they are responsive; or, produced in the manner in which they are
regularly maintained by you; or, in another manner as stated in the applicable civil
rules.



3.     All responsive documents that you are capable of producing must be produced, whether they are in your possession or control, or in the possession or control of your agents, servants, attorneys, accountants, or others subject to your direction, or otherwise are available to you.

4.     These requests call for the production of all nonidentical copies, inclusive of drafts, and of any copies upon which any notes, legends, stamps, notations, or interlineation have been placed, or which have been altered, amended, added to, deleted from, or otherwise changed in any way.

5.     All documents must be produced in a form readable by the requesting party.  To the extent you produce documents that are responsive to these requests, but that are maintained by you in a form that would not be readable or intelligible without software, hardware, decoding information or equipment, keys or digests listing the meaning of abbreviations or symbols, or other resources not available to the requesting party, you are required to prepare and supply the information in another form readable by the requesting party (e.g., by printing out computerized data onto a paper record), or to produce with the document all additional materials or resources needed to make them intelligible (e.g., by providing keys to abbreviations).

6.     Unless otherwise stated, these requests demand all documents created, received, and/or maintained during any part of the time period from and including 1992 to the present.

7.     If any requested document was but is no longer in your possession or subject to your control, or is no longer in existence, state whether such document is or was missing or lost; destroyed; transferred to others; otherwise disposed of; or for any other reason no longer in your possession or control or available to you.  In each such instance, also set forth the surrounding circumstances of the loss, destruction, transfer, or disposition; describe in detail the authorization or basis for such disposition; state the date (or closest approximate date known to you) of such disposition; state the current location and custodian of the document and any copies thereof; and summarize the contents of such document in as much detail as possible.  If the document was destroyed or discarded pursuant to a written document retention, distinction, storage, or filing policy, produce a copy of said policy.

8.     Whenever any objection is made to any numbered or lettered paragraph or other portion of any request, or portion thereof, a response shall be

furnished to all other paragraphs or other portions of such request, as to which there is no objection.

9.   With respect to the application of privileges:  If you decline to produce any document responsive to a request herein, in whole or in part on the ground of a claim of privilege, so state in your response to the request; identify the allegedly privileged document (see definition of "identify," below) describe the privileges claimed; state in detail the factual basis for the claim of privilege; and identify all persons whose involvement is relevant to the claim, e.g., identify all attorneys involved in connection with a claim of attorney-client privilege, etc. (see definition of "identify," below).

10.   If in responding to any of these requests you encounter what you deem to be an ambiguity, either in the requests itself or in any definition or instruction which is relevant to the request, state in your answer the matter deemed ambiguous and the construction employed by you in responding to the interrogatory.

11.   Your responses to these requests must be supplemented, amended or revised, as many times as necessary and at all times that may be appropriate, to the full extent required by applicable rules, orders of court, or any agreements or representations to which you are a party.

12.   If any of the documents requested herein have been previously produced in this litigation by you in response to earlier discovery requests, and are available to the requesting party in a common depository or similar location, in lieu of producing them again to the requesting party you may designate in your response the production numbers stamped upon the responsive documents previously produced and identify the particular discovery request(s) pursuant to which they were produced by the name of the set of requests, the identity of the earlier requesting party, and the number of his request.

13.   All references to gender, in pronouns or otherwise, are to be disregarded unless the context of the interrogatory clearly indicates the contrary; thus, all references to the male includes the female (i.e., "he" refers to both "he" and "she"), and vice versa.  All references to the singular include the plural, and vice versa.

# DEFINITIONS

A.     The terms "you," "your," and "Penn State" refer to Defendant, Pennsylvania State University, and include its agents, employees, and all acting on its behalf.  The terms include all of Defendant's campuses.

B.     "Person" or "persons" mean all entities of whatever description, including without limitation all individuals, associations, joint ventures, corporations, trusts and estates.

C.     "Document" means (a) all written or graphic matter of any kind or character, however produced or reproduced; and (b) all electronically or magnetically recorded or stored matter of any kind or character, however produced or reproduced; and (c) all other matters and tangible things of any kind or character, that constitute the recording of any information or thing by words, image or sound, or the storage of same in any retrievable way, by any means of communication, representation or data retention.  The term "document" as used herein includes, without limitation, all correspondence, letters, memoranda, contracts, agreements, notes, charts, tables, spreadsheets, reports, compendia, compilations, books, monographs, abstracts, precis, summaries, diaries, calendars, planners, schedules, digests, ledgers, logs, lists, and all other recordings of information, images or sounds on paper, of any kind or description whatsoever.  The term "document" also includes, without limitation, all magnetic disks, compact disks, magnetic tapes, magnetic cards, hard disks, floppy disks, CD-ROM disks, phonograph records, cassette tapes, reel-to-reel tapes, and all other electronically, magnetically, or digitally recorded information, in any form.  The term "document" also includes, without limitation, all memory media of any kind whatsoever and all other non-paper forms of recorded or memorialized data, words, information, images, or sounds.

D.     "Identify" or "identification" requires, with respect to a document, that you set forth:  (a) a brief statement of the general nature of its contents; (b) the identity of the person who prepared the document; (c) the place where the document was prepared; (d) the date of preparation; (e) if the document was directed to another person, the identity of all persons who were sent copies of the document or who are indicated on the face of the document as recipients; (f) all production numbers affixed to the document in connection with this litigation, if any; and (g) the identity of the person or persons presently in possession of the original and/or any copies.  If unable to provide all of this information in response to a request for identification, you are instructed to provide as much of the

4

information as is known to you, and to specifically indicate which information specified in this definition is not within your knowledge.

## **REQUESTS**

1.     All documents that relate, refer, or pertain to the alleged sexual assault reported by Plaintiff or any investigation Penn State conducted into the alleged sexual assault.

2.     All documents that relate, refer, or pertain to the criminal charges against Nate Parker or Jean Celestin, or Penn State's involvement with or inquiry into the same, including without limitation all communications between any person affiliated in any capacity with Penn State and any third party relating to those charges.  The latter category includes without limitation all communications by any person affiliated with Penn State and the court pertaining to the charges or sentencing.

3.     All documents that relate, refer, or pertain to any alleged harassment of Plaintiff by Nate Parker, Jean Celestin, or others or any investigation by Penn State of such alleged harassment.

4.     All written policies or procedures relating to sexual harassment or the handling of complaints relating to sexual or other harassment in effect at Penn State since August 1, 1999.

5.     All documents that relate, refer, or pertain to Penn State's investigation or handling of any of the complaints of harassment that are the subject of interrogatory numbers 10, 11, and 12 in Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

6.     All documents that relate, refer, or pertain to the student criminal cases which are the subject of interrogatory number 13 in Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

7.     All documents that relate, refer, or pertain to your analysis or consideration of any actions that were or might be taken in any case involving a complaint of sexual or other harassment to protect the complaining party from such harassment.

8.     All documents that you reviewed, considered, or relied upon in preparing your responses to Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

6

9.    All documents that you identified or were called upon to identify in your responses to Plaintiff's First Set of Interrogatories Directed to Defendant.

10.    All documents identified in your disclosure pursuant to Rule 26(a) of the Federal Rules of Civil Procedure that have not been previously produced to Plaintiff.

11.    All documents that relate, refer, or pertain to any discipline, from an informal admonishment to any step including dismissal, taken with respect to any employee of Penn State that is based in whole or in part upon any actions or events relating to the alleged sexual assault reported by Plaintiff, her subsequent claims of harassment, the University's involvement in investigating or acting upon those complaints, or the University's or its personnel's involvement in any way with the criminal charges against Nate Parker or Jean Celestin.

12.    All files that relate, refer, or pertain to any disciplinary investigation or action involving Plaintiff, Nate Parker, and/or Jean Celestin, including files relating to disciplinary or judicial proceedings involving those students, portions of their student files relating to disciplinary action whether proposed or actual, and any investigation files relating to disciplinary action whether proposed or actual.

13.    All documents that relate, refer, or pertain to Plaintiff's academic standing and status at Penn State, including but not limited to documents reflecting her enrollment status and any changes in her enrollment status, any scholarships or financial aid to Plaintiff received from or through or applied at Penn State, or her grades.

Dated:        May 3, 2002              By: _____
                                          Terry L. Fromson
                                          Women's Law Project
                                          125 S. Ninth St.  Suite 300
                                          Philadelphia, PA  19106
                                          (215)928-9801
                                          Attorney for Plaintiff


AS TO ANSWERS:

Dated:                                 By: _____
                                          James M. Horne
                                          Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2002, I caused to be served true and correct

copies of the foregoing Plaintiff's First Set of Interrogatories Directed to

Defendant and Plaintiff's First Set of Requests for Document Production Directed

to Defendant upon the following by U.S. First Class Mail, Postage Prepaid:

James M. Horne
McQuaide Blasko
811 University Dr.
State College, PA  16801-6699
*Attorney for Defendant*


Terry L. Fromson
Women's Law Project
125 S. Ninth St.  Suite 300
Philadelphia, PA  19107
(215)928-9801

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| vs. | : | No. 4:02-CV-0369 |
| | : | |
| PENNSYLVANIA STATE UNIVERSITY, | : | Judge McClure, Jr. |
| | : | |
| | : | |
| Defendant. | : | |

PLAINTIFF'S FIRST SET OF INTERROGATORIES
DIRECTED TO DEFENDANT

Jane Doe hereby demands that you serve upon her, within thirty (30) days of service hereof, written answers under oath to the interrogatories set forth herein, pursuant to Rule 33 of the Federal Rules of Civil Procedure.

## **INSTRUCTIONS**

1.     These interrogatories are continuing in character so as to require Defendant to file supplemental answers if Defendant obtains further or different information prior to trial.

2.     Each interrogatory is to be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to answer each interrogatory based on the knowledge you currently have. However, if investigation is continuing, or discovery is not complete, with respect to the matter inquired into, so state in your answer.

3.     In answering these interrogatories, furnish all such information as is available to you, not merely such information as is within your own knowledge. This means you are to furnish information which is known by or in the possession of your employees, representatives, or agents, including your attorneys or physicians, whether obtained through first-hand knowledge or inquiry.

4.     Do not incorporate by reference facts contained in documents or publications; specify the precise facts, allegations, names, etc., called for by the interrogatories regardless of whether the same are set forth elsewhere.

5.     If you maintain that any document or record which refers to or relates to anything about which these interrogatories ask has been lost or destroyed, set forth the contents of said document, the location of any copies of said document, the date of such destruction, and the identity of the person authorizing such destruction, if any.

6.     Whenever any objection is made to any numbered or lettered paragraph of any interrogatory, or portion thereof, an answer shall be furnished to any other numbered or lettered paragraph of such interrogatory, or portion thereof, as to which there is no objection.

7.     With respect to the application of privileges: If you decline to answer all or part of an interrogatory, or to identify a writing or communication, or to provide information, on the ground of a claim of privilege, so state in response to the interrogatory, describe the privileges claimed, and describe the factual basis on which the privilege is claimed.

8.     All references to gender, in pronouns or otherwise, are to be disregarded unless the context of the interrogatory clearly indicates the contrary; thus, all references to the male includes the female (i.e., "he" refers to both "he" and "she"), and vice versa. All references to the singular include the plural, and vice versa.

9.     If in answering any of the within interrogatories you encounter any ambiguity, either in the interrogatory itself or in any definition or instruction that is relevant to the interrogatory, state in your answer the matter deemed ambiguous and the construction employed by you in answering the interrogatory.

10.     Answers to questions 10 through 13 can be limited to instances in the past ten years.  To the extent Defendant identifies any of the information required to answer those questions as confidential, Plaintiff will not publicly disclose, file in a public filing, or use other than for purposes of this litigation the information provided, pending a further order or agreement on confidentiality.

## **DEFINITIONS**

Unless a contrary meaning appears in the text, the following definitions apply:

A.     The terms "you," "your," and "Penn State" refer to Defendant, Pennsylvania State University, its agents, employees, and all acting on its behalf. The terms include all of Defendant's campuses.

B.     "Person" or "persons" mean all entities of whatever description, and includes all individuals, associations, joint ventures, corporations, trusts and estates.

C.     The term "document" means (a) any written or graphic matter of any kind or character, however produced or reproduced; (b) any electronically or magnetically recorded or stored matter of any kind or character, however produced or reproduced; and (c) any other matter of any kind or character constituting the recording of any tangible thing, or storage in any retrievable way, by any means of communication, representation or data retention.

D.     The terms "identify" or "identification" shall require, with respect to a document:  (a) a brief statement of the general nature of its contents; (b) the identity of the person who prepared the document; (c) the place where the document was prepared; (d) the date of preparation; (e) if the document was directed to another person, the identity of any person who was sent a copy of the document; and (f) the identity of the person or persons presently in possession of the original and/or any copies.  If unable to provide all of this information in response to a request for identification, you are instructed to provide as much of

the information as is known to you and to specifically indicate that the remaining information specified in this definition is not within your knowledge.

E.     The term "identify" or "identification" shall require, with respect to a person:  (a) his, her, or its full name; (b) the last known home and business addresses and telephone numbers of a natural person, or the principal business address and telephone number of any other person; (c) in respect to a natural person, the identification of the person's employer(s) at all relevant times and the person's job classification or title with each employer herein identified.  If unable to provide all of this information in response to a request for identification, you are instructed to provide as much of the information as is known to you and to specifically indicate that the remaining information specified in this definition is not within your knowledge.

F.     The terms "state the basis for" or "set forth in detail," when used in reference to a contention, statement or asserted fact, means to set forth each and every fact that is relevant to or forms any part of the basis for such contention, statement or asserted fact, not in general or vague terms but in as much specific and particular detail as you are capable of providing, to include (without limitation) the following:  all relevant names, dates, and particular; the exact words, or if the exact words are not known, the substance of any relevant statements; and the source of each and every fact, including full identification of all persons and documents.

# INTERROGATORIES

1.      If you conducted any investigation into an alleged sexual assault Plaintiff reported to you or the police, describe in detail the investigation conducted by Defendant, including without limitation the following:

   a.      Identify all persons interviewed.
   b.      Identify all Penn State officials or others involved in the investigation and state their roles.
   c.      Identify all documents gathered.
   d.      Identify all sources of information consulted.
   e.      Describe all remedial steps considered and the reasons each was/was not taken.
   f.      Describe in detail the results of the investigation and the conclusions reached by Penn State.
   g.      Identify all reports, summaries, and other documents that purport to summarize the investigation or its result in whole or in part.

**Answer:**

2.    Identify all Penn State officials or employees who received any report, complaint, notice or other communication from Plaintiff indicating that she believed she was being harassed at any time between August 1, 1999, and the present.  As to each person identified, provide the date of notification, the form and substance of the notification received, and the date and substance of the response undertaken, if any.

**Answer:**

3.    If Defendant conducted any investigation into whether Plaintiff was harassed by Nate Parker, Jean Celestin, and/or others after the alleged August 1999 sexual assault, describe in detail the investigation conducted by Defendant, including without limitation the following:

     a.    Identify all persons interviewed.

     b.    Identify all Penn State officials or others involved in the investigation and state their roles.

     c.    Identify all documents gathered.

     d.    Identify all sources of information consulted.

     e.    Describe all remedial steps considered and the reasons each was/was not taken.

     f.    Describe in detail the results of the investigation and the conclusions reached by Penn State.

     g.    Identify all reports, summaries, and other documents that purport to summarize the investigation or its result in whole or in part.

**Answer:**

4.     Identify all persons who you believe have or may have information regarding any harassment or alleged harassment of Plaintiff by Nate Parker, Jean Celestin, and/or others after the alleged August 1999 sexual assault or any investigation of same by Defendant.  As to each person identified, provide a summary of the information s/he has or may have about any harassment of Plaintiff.

**<u>Answer:</u>**

5.    If you have any information that, after Defendant issued its October 29, 1999, administrative directive to Nate Parker and Jean Celestin, someone violated that directive, describe in detail the violation (including the identity of the violator(s)) and the response Defendant took to such a violation, including whether a charge of failure to comply was issued and whether any disciplinary action resulted.

**Answer:**

6.    If you contend that Penn State was precluded by applicable law from excluding Nate Parker, Jean Celestin, and/or others from its campus after Plaintiff complained to the University that they were continuing to harass her in violation of the University's instructions to have no contact with her, explain in detail the reasons why you believe Penn State was precluded from excluding Nate Parker, Jean Celestin, and/or others from the campus, including specific identification of all statutes, regulations, case decisions, and other sources of controlling law that support your contention.

**<u>Answer:</u>**

7.     Identify by title, date, and other identifying information or characteristics all policies of Penn State University relating to sexual or other harassment of students that were in effect between August 1, 1999, and the present and describe in detail how and when Penn State publicized those policies to its students.

**<u>Answer:</u>**

8.  If Penn State has changed its policies relating to sexual harassment or the University's response to sexual harassment since it first received a complaint from Plaintiff relating to the harassment by Nate Parker, Jean Celestin, and others:

    a.  State the dates on which each change was made and the effective dates of any such changes.

    b.  Describe in detail the nature of the changes in your policy and the reasons for any such changes.

    c.  Identify by title, date, and other identifying information or characteristics each changed policy as propagated by Penn State.

    d.  Describe how and when Penn State publicized those changes to its students.

**Answer:**

9.    If Penn State has an office responsible for receiving complaints relating to compliance with Title IX, state the following:

    a.    The date that office first was established, or, if an already established office, the date the office first became responsible for Title IX.

    b.    Whether that office has continued in existence since its creation (and if not, state all dates when no such office was in operation).

    c.    The person responsible for that office.

    d.    Describe in detail all actions and dates of such actions taken by Penn State to publicize to students, faculty members, employees, or others the existence and identity of that office.

**Answer:**

10.     If Penn State has received any complaint of sexual or other harassment from a student, faculty member, employee, or other person, other than complaints made by Plaintiff, separately with respect to each of the complaints within the scope of the description in that interrogatory, state the following:

a.     The name of the complaining party and whether the complaining party was a student, faculty member, employee, or other person (and if an "other person" state the relationship of that person to Penn State).

b.     The nature of the harassment complained of.

c.     The date(s) when the complaint was received by Penn State.

d.     The person(s) at Penn State who received the complaint(s).

e.     The person(s) at Penn State responsible for investigating the complaint(s).

f.     The person at Penn State responsible for acting upon or taking steps to remedy the complaint(s).

g.     All steps taken to protect the complaining party from any further or continuing harassment.

h.     All steps considered but not taken or implemented for the purpose of protecting the complaining party against further harassment and the reasons such steps were not taken.

i.     All steps taken to discipline or punish the harasser.

**Answer:**

14

11.    Have you ever taken any of the following steps after receiving a complaint of sexual or other harassment from a student, faculty member, employee, or other person (state yes or no separately for each step listed below, and if yes, identify the complaining parties, alleged harasser, and nature of the harassment complained of):

      a.    Suspended the alleged harasser from employment with Penn State or attendance at Penn State as a student.

      b.    Excluded the alleged harasser from any part or all of a Penn State campus.

      c.    Provided a non-student escort to accompany the complaining party to class, work, or university facilities.

      d.    Restricted or monitored the alleged harasser's movement on campus.

      e.    Required the alleged harasser to attend counseling on sexual harassment.

      f.    Informed the alleged harasser as to what conduct is appropriate.

      g.    Prohibited retaliation for reporting the alleged sexual harassment.

**Answer:**

12.     If you are aware of any case in which a person accused of sexual or other harassment was ordered by Penn State to have no further contact with the complaining party for some period of time and subsequently had such contact, directly or indirectly, in violation of Penn State's instructions not to do so, then separately as to each such case known to you state the following information:

   a.     The identity of the complaining party.
   b.     The identity of the alleged harasser.
   c.     The nature of the harassment complained of.
   d.     The date the complaint was received.
   e.     The date the alleged harasser was instructed to cease further contact with the complaining party.
   f.     When and how Penn State learned that its instruction to cease further contact had been disobeyed.
   g.     What steps Penn State took in light of the violation of its instruction, and the reasons for those steps.

**Answer:**

13.    If you are aware of any case in which a Penn State student has been subject to criminal charges and bound over in a preliminary hearing, then separately as to each such case known to you state the following information:

    a.    The identity of the student charged.

    b.    The nature of the criminal charges.

    c.    The date of the alleged criminal incident and preliminary hearing.

    d.    Any discipline imposed by Penn State as a result of the alleged criminal incident.

    e.    If no disciplinary action was taken by Penn State, the reason why.

    f.    The date of the disciplinary action taken by Penn State.

    g.    Whether some or all of the discipline was imposed prior to the disposition of the criminal charges, and if so, which disciplinary actions were taken prior to such disposition.

    h.    Whether some or all of the discipline was deferred until prior to the disposition of the criminal charges, and if so, which disciplinary actions were deferred and why.

    i.    The process, if any, leading up to the discipline imposed by Penn State.

    j.    Whether the accuser or victim in the criminal case testified before a Penn State disciplinary body or gave information about the criminal incident in a Penn State investigation prior to the disposition of the criminal charges.

**Answer:**

Dated:        May 3, 2002                    By: _____
                                             Terry L. Fromson
                                             Women's Law Project
                                             125 S. Ninth St.  Suite 300
                                             Philadelphia, PA  19106
                                             (215)928-9801
                                             Attorney for Plaintiff

AS TO ANSWERS:

Dated:                                       By: _____
                                             James M. Horne
                                             Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOE,                          }        No.  4:CV-02-0369
      Plaintiff,              }
   v.                          }        Judge McClure, Jr.
                                   }
THE PENNSYLVANIA STATE             }        Jury Trial Demanded
UNIVERSITY,                        }
      Defendant.              }        Complaint filed: 3-06-02

## RESPONSE OF DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY'S TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

### GENERAL OBJECTIONS

**A.     Beyond Scope of Fed.R.C.P.**

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent that they exceed the scope of, or would impose any greater obligation on Defendant, than the requirements of the Federal Rules of Civil Procedure.

**B.     Privilege/Work Product**

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent they seek documents and/or tangible things that would disclose, information protected by



the attorney-client privilege, work product doctrine, or any other privilege or protection to which Defendant is entitled.

### C.     Third Party Documents and/or Tangible Things

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent that they request information and/or tangible things from any and all agents, attorneys, investigators, consultants, experts, and other representatives Defendant has retained and to the extent that they require Penn State to obtain and compile information and/or tangible things from third parties.

### D.     No Waiver

Inadvertent production of privileged information by Defendant shall not constitute waiver of any applicable privilege or doctrine, including, but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, privilege and/or admissibility as evidence as such objections may apply at trial or otherwise in this action.

### E.     Duplication

Defendant objects to the discovery requests to the extent they call for a duplicate production of documents and/or tangible things previously produced to Plaintiff.

### F.     Right to Privacy

Defendant objects to each and every discovery request to the extent they call for information protected by the United States Constitution and any applicable statutes, including, but not limited to, the right of privacy and/or rights arising under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.A. § 1232g, et seq.

Case 4:02-cv-00369-JEJ   Document 28   Filed 08/19/02   Page 45 of 136

## G.   Confidential

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent they seek documents and/or tangible things that would disclose trade secrets, confidential information and/or confidential proprietary, research or development information.

## H.   Right to Supplement

This response is based upon documents and/or materials presently available to and located by Defendant and is given without prejudice to Defendant's right to produce additional documents and/or tangible things at a later date should they become located and available as a result of subsequent review of its records or as a result of additional investigation or discovery.

## I.   No Concession

By producing or failing to produce some or all of the requested documents and/or materials, Defendant does not concede the relevance or materiality of any request or the subject to which it relates.

## J.   No Wavier

Defendant's decision to provide documents and/or materials notwithstanding the objectionable nature of any of the definitions or instructions, or of the documents and/or materials requests themselves, should not be construed as: (1) a stipulation that the documents, information contained therein and/or materials are relevant; (2) a waiver of the General Objections or the objections asserted in response to specific document and/or materials requests, or (3) an agreement that additional requests for similar documents, information contained therein and/or materials will be treated in a similar manner.

## REQUESTS

1.  All documents that relate, refer, or pertain to the alleged sexual assault reported by

    Plaintiff or any investigation Penn State conducted into the alleged sexual assault.

**Response:**

    **This request is objected to as overbroad, as seeking to require Defendant to make an unreasonable investigation, as seeking to impose an undue burden and expense upon Defendant, as seeking documents which Defendant is prohibited from releasing by FERPA, and as requesting documents protected by the attorney-client privilege. The basis for these objections is more fully set forth in response to the other requests herein. This request is further objected to as seeking the production of documents equally available and accessible to Plaintiff.**

    **Subject to that objection, please refer to those documents produced in response to the other requests.**

    **Defendant is willing to provide more specific information responsive to this request, but Defendant is constrained from doing so until such time as a judicial order authorizing same is obtained, as required by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.A. § 1232 (b)(2). Defendant will cooperate with all reasonable efforts by Plaintiffs to obtain such an order.**

2. All documents that relate, refer, or pertain to the criminal charges against Nate Parker or Jean Celestin, or Penn State's involvement with or inquiry into the same, including without limitation all communications between any person affiliated in any capacity with Penn State and any third party relating to those charges. The latter category includes without limitation all communications by any person affiliated with Penn State and the Court pertaining to the charges or sentencing.

**Response:**

Subject to the responses and objections made to the other requests herein, Defendant objects to this request as overly broad, as requiring the making of an unreasonable investigation by Defendant, as seeking to impose undue burden and expense upon Defendant, as being made for the purpose of harassing Defendant, and as seeking the production of documents that are equally available and accessible to Plaintiff. Specifically, this request seeks "all communications between **any person affiliated in any capacity with Penn State** and any third party relating to these charges. The latter category includes without limitation **all communications by any person affiliated with Penn State** and the Court pertaining to the charges or sentencing."

Defendant The Pennsylvania State University has 24 campuses, 66 co-operative extension offices, numerous research sites, 80,000± students and 15,000± full time employees, together with alumni and others who may be considered as "affiliated in any capacity" with Penn State. It is impossible for Defendant to interview, contact and/or communicate with all these individuals in an effort to respond to this request.

Subject to these objections, Defendant responds as follows and provides herewith:

(a)     Criminal file from the Prothonotary's Office of Centre County relative to the

        charges against Jean Celestin; Bates #1 TO 139;

(b)     Criminal file from the Prothonotary's Office of Centre County relative to the

        charges against Nathaniel Parker, Bates #140 to 234;

(c)     Court's Opinion re: Celestin appeal asserting ineffective assistance of

        counsel; Bates #235 to 240;

(d)     Court's Opinion re: Sentencing, Bates #241 to 246; and,

(e)     Letter of Dr. Arthur Carter dated November 15, 2001, Bates #247.

Defendant is also in possession of transcripts from the criminal trial of Parker and

Celestin, the preliminary hearing transcript, and transcripts from the sentencing

proceedings.  These are not produced herewith as they are believed to be in the

possession of Plaintiff and/or her counsel and in any event are equally accessible to

Plaintiff.

3.     All documents that relate, refer, or pertain to any alleged harassment of Plaintiff by Nate

Parker, Jean Celestin, or others or any investigation by Penn State of such alleged

harassment.

**Response:**

**Subject to the responses and objections made to the other requests herein,**

**particularly requests 1, 10 and 12, Defendant provides the following:**

(a)     **University Police - Incident Report, No. 41-99-2608, Bates #248 to 256;**

(b)     **University Police - Incident Report, No. 41-99-2641, Bates #257 to 258; and,**

(c)     **University Police - Incident Report, No. 41-99-2918, Bates #259 to 261.**

4.      All written policies or procedures relating to sexual harassment or the handling of

complaints relating to sexual or other harassment in effect at Penn State since August 1,

1999.

**Response:**

Defendant objects to this request as overbroad and as seeking the production of

documents that are neither relevant nor reasonable calculated to lead to the discovery of

relevant information.  Specifically, Defendant objects to producing all written policies or

procedures relating to "other harassment" or the handling of complaints relating to "other

harassment."  The request is also objected to as vague and ambiguous.

Subject to these objections, and without waiving same, Defendant provides herewith

the following:

(a)      Student Guide to General University Policies and Rules (2001/2002), Bates
#262 to 312;

(b)      Policy AD12, Sexual Assault, Bates #313 to 314;

(c)      Policy AD 41, Sexual Harassment, Bates #315 to 317;

(d)      Procedures for the Discipline System, Bates #318 to 328; and,

(e)      Office Judicial Affairs Policy re: Responding to Off-Campus Misconduct,
Bates #329 to 336.

5.    All documents that relate, refer, or pertain to Penn State's investigation or handling of any of the complaints of harassment that are the subject of interrogatory numbers 10, 11, and 12 in Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

**Response:**

   **This request is objected to for the reasons set forth in response to Interrogatories #10, 11 and 12, all of which are incorporated herein by reference. By way of further response, see documents Bates #1286 to 1473 produced as part of Defendant's Answers to Interrogatories.**

6.     All documents that relate, refer, or pertain to the student criminal cases which are the subject of interrogatory number 13 in Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

**Response:**

**None produced for the reasons set forth in response to Interrogatory #13.**

7.    All documents that relate, refer, or pertain to your analysis or consideration of any actions that were or might be taken in any case involving a complaint of sexual or other harassment to protect the complaining party from such harassment.

**Response:**

Defendant objects to this request in its entirety. As phrased, it is unreasonable, overbroad and completely lacking in specificity. The request seeks all documents relative to any and all complaints of sexual or other harassment without any limitation as to the time period involved or the nature of the harassment. As set forth in response to other requests herein, any attempt to provide the documents requested herein would necessitate a review of thousands of files in the Office of Judicial Affairs and the Affirmative Action Office. As such, this request would impose undue burden and expense on Defendant, and require the making of an unreasonable investigation.

Defendant has provided, herewith, documentation from the Office of Judicial Affairs regarding the rights of victims, Bates # 337 to 339.

8.      All documents that you reviewed, considered, or relied upon in preparing your responses to Plaintiff's First Set of Interrogatories Directed to Defendant, served contemporaneously with these requests.

**Response:**

**All such documents have been produced, or if they have not been produced, the reason, objection or rationale for not producing same has been stated in response to the specific request.**

9.      All documents that you identified or were called upon to identify in your responses to

Plaintiff's First Set of Interrogatories Directed to Defendant.

**Response:**

**Subject to those objections set forth herein and in response to Plaintiff's First Set of Interrogatories, any and all such documents are provided either as part of the Defendant's Answers to Plaintiff's First Set of Interrogatories or we provided in response to Plaintiff's other document requests herein.**

10.     All documents identified in your disclosure pursuant to Rule 26(a) of the Federal Rules of

Civil Procedure that have not been previously produced to Plaintiff.

**Response:**

**Defendants are providing, or will provide, subject to the obtaining of an appropriate Court Order authorizing the disclosure of FERPA - privileged documents, the following:**

**(a)      Documents from Gail Hurley, Director of Residence Life, Student Affairs, Bates #340 to 357;**

**(b)      Documents from the Center for Women Studies, Student Affairs, Bates #358 to 372;**

**(c)      Documents from the file of the Student Affairs Office, Bates #373 to 402, 404-468; see also privileged document log;**

(d)     Documents from the file of Janis Jacobs, Vice President for Administration, Bates #469, 475-480, 482-484, 486-488, 493-503, 506-508, 510-533, 538-554, 57-559,  561-585 and 589-618; see also privileged document log;

(e)     Documents from Joseph Puzycki, Office of Judicial Affairs, Bates #620 to 777 see also privileged document log;

(f)     AAO contact log re: complaints by student athletic trainer, see privileged document log;

(g)     Various documents relating to University policies, procedures, and protocols, not produced in response to any other request herein, Bates #875 to 965;

(h)     Responsive file material relative to Nathaniel Parker and Jason Celestin from Troy Sunderland and the Department of Athletics, see privileged document log.

11.   All documents that relate, refer, or pertain to any discipline, from an informal

admonishment to any step including dismissal, taken with respect to any employee of

Penn State that is based in whole or in part upon any actions or events relating to the

alleged sexual assault reported by Plaintiff, her subsequent claims of harassment, the

University's involvement in investigating or acting upon those complaints, or the

University's or its personnel's involvement in any way with the criminal charges against

Nate Parker or Jean Celestin.

**Response:**

**None.**

12.     All files that relate, refer, or pertain to any disciplinary investigation or action involving Plaintiff, Nate Parker, and/or Jean Celestin, including files relating to disciplinary or judicial proceedings involving those students, portions of their student files relating to disciplinary action whether proposed or actual, and any investigation files relating to disciplinary action whether proposed or actual.

**Response:**

     **Defendant is in possession of the Office of Judicial Affairs disciplinary files pertaining to Jean Celestin and Nathaniel Parker.   See privileged document log.**

     **These files will be produced by Penn State upon the obtaining of a Court Order permitting disclosure of same, and Penn State will cooperate in any and all reasonable efforts by Plaintiff to obtain such an Order.  Defendant understands and expects that, upon obtaining said files, Plaintiff will comply with the FERPA and all confidentiality agreement provisions in connection with Plaintiff's use and review of same.**

13.    All documents that relate, refer, or pertain to Plaintiff's academic standing and status at Penn State, including but not limited to documents reflecting her enrollment status and any changes in her enrollment status, any scholarships or financial aid to Plaintiff received from or through or applied at Penn State, or her grades.

**Response:**

**Please see the following documents provided herewith:**

**(a)    Admissions Application Material, Bates #1241 to 1253;**

**(b)    Financial Aid Information, Bates #1254 to 1283; and,**

**(c)    Transcript, Bates #1284 to 1285.**

McQUAIDE, BLASKO, SCHWARTZ,
FLEMING & FAULKNER, INC.

Dated: June 19, 2002          By:_____
                                    James M. Horne, Esquire
                                    I.D. No. 26908
                                    811 University Drive
                                    State College, PA  16801
                                    (814) 238-4926

                                    Attorneys for Defendant

## DOE vs. PSU
## PRIVILEGED DOCUMENT LOG

| Bates # | Document Description | Author | Recipient | W/holding Ground(s) |
|---|---|---|---|---|
| 000403 | 12/3/01 Memorandum re J. Parker | J. Puzycki | M. Katz | Attorney/Client Priv. |
| 000470-471 | 3/12/02 E-mail re J. Doe | J. Jacobs | Multiple PSU | Attorney/Client Priv. |
| 000472-473 | 3/7/02 E-mail re Rape Case Lawsuit | B. Mahon | Multiple PSU | Attorney/Client Priv. |
| 000481 | 3/8/02 Letter re J. Parker | W. Courtney | W. Asbury, J. Jacobs, G. Schultz | Attorney/Client Priv. |
| 000485 | 3/8/02 Letter re J. Parker | W. Courtney | W. Asbury, J. Jacobs, G. Schultz | Attorney/Client Priv. |
| 000489-490 | 12/2/99 E-mail re J. Parker | Multiple PSU | W. Courtney | Attorney/Client Priv. |
| 000491-492 | 3/7/02 E-mail | | B. Mahon | Attorney/Client Priv. |
| 000504-505 | 12/2/99 E-mail re J. Parker | J. Jacobs | Multiple PSU | Attorney/Client Priv. |
| 000509 | 12/1/99 E-Mail re J. Parker | W. Courtney | Multiple PSU | Attorney/Client Priv. |
| 000534-535 | 11/10/99 E-mail re Legal Counsel | W. Courtney | Multiple PSU | Attorney/Client Priv. |
| 000536-537 | 11/11/99 E-mail re Legal Counsel | J. Puzycki | G. Schultz | Attorney/Client Priv. |
| 000555-556 | 12/7/01 E-mail re Celestin case | G. Spanier | J. Jacobs | Attorney/Client Priv. |
| 000560 | 12/7/01 E-mail re Celestin case | J. Jacobs | G. Spanier | Attorney/Client Priv. |
| 000586-838 | E-mails re Parker & Celestin ease | Multiple PSU | Multiple PSU | Attorney/Client Priv. & FERPA |
| 000839-873 | Student Disciplinary File re Parker | | | FERPA |
| 000874 | 11/17/00 Complaint/Contact sheet | | | FERPA |

| Bates # | Document Description | Author | Recipient | W/holding Ground(s) |
|---|---|---|---|---|
| 000966-1049 | Department of Athletics Files re Parker and Celestin | | | FERPA |
| 001050-1186 | Student Disciplinary File re  Celestin | | | FERPA |
| 001187-1233 | Student Disciplinary File re  Parker | | | FERPA |
| 001234-1240 | Student Disciplinary File re Parker | | | FERPA |

/sap
6/16/02

O:\DMA\PC\DOCS\DOCS\LIB232378\6\1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | } | No. 4:CV-02-0369 |
| Plaintiff, | } | |
| v. | } | Judge McClure, Jr. |
| | } | |
| THE PENNSYLVANIA STATE | } | Jury Trial Demanded |
| UNIVERSITY, | } | |
| Defendant. | } | Complaint filed: 3-06-02 |

## DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT

### GENERAL OBJECTIONS

**A.    Beyond Scope of Fed.R.C.P.**

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the

extent that they exceed the scope of, or would impose any greater obligation on Defendant, than

the requirements of the Federal Rules of Civil Procedure.

**B.    Privilege/Work Product**

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent they seek documents and/or tangible things that would disclose, information protected by the attorney-client privilege, work product doctrine, or any other privilege or protection to which Defendant is entitled.

**C.     Third Party Documents and/or Tangible Things**

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent that they request information and/or tangible things from any and all agents, attorneys, investigators, consultants, experts, and other representatives Defendant has retained and to the extent that they require Penn State to obtain and compile information and/or tangible things from third parties.

**D.     No Waiver**

Inadvertent production of privileged information by Defendant shall not constitute waiver of any applicable privilege or doctrine, including, but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, privilege and/or admissibility as evidence as such objections may apply at trial or otherwise in this action.

**E.     Duplication**

Defendant objects to the discovery requests to the extent they call for a duplicate production of documents and/or tangible things previously produced to Plaintiff.

**F.     Right to Privacy**

Defendant objects to each and every discovery request to the extent they call for information protected by the United States Constitution and any applicable statutes, including,

but not limited to, the right of privacy and/or rights arising under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C.A.  § 1232g, et seq.

**G.     Confidential**

Defendant objects to Plaintiff's definitions, instructions and discovery requests to the extent they seek documents and/or tangible things that would disclose trade secrets, confidential information and/or confidential proprietary, research or development information.

**H.     Right to Supplement**

This response is based upon documents and/or materials presently available to and located by Defendant and is given without prejudice to Defendant's right to produce additional documents and/or tangible things at a later date should they become located and available as a result of subsequent review of its records or as a result of additional investigation or discovery.

**I.     No Concession**

By producing or failing to produce some or all of the requested documents and/or materials, Defendant does not concede the relevance or materiality of any request or the subject to which it relates.

**J.     No Wavier**

Defendant's decision to provide documents and/or materials notwithstanding the objectionable nature of any of the definitions or instructions, or of the documents and/or materials requests themselves, should not be construed as: (1) a stipulation that the documents, information contained therein and/or materials are relevant; (2) a waiver of the General Objections or the objections asserted in response to specific document and/or materials requests,

or (3) an agreement that additional requests for similar documents, information contained therein and/or materials will be treated in a similar manner.

## **INTERROGATORIES**

1.      If you conducted any investigation into an alleged sexual assault Plaintiff reported to you

or the police, describe in detail the investigation conducted by Defendant, including

without limitation the following:

      a.      Identify all persons interviewed.

      b.      Identify all Penn State official or others involved in the investigation and

            state their roles.

      c.      Identify all documents gathered.

      d.      Identify all sources of information consulted.

      e.      Describe all remedial steps considered and the reasons each was/was not

            taken.

      f.      Describe in detail the results of the investigation and the conclusions

            reached by Penn State.

      g.      Identify all reports summaries, and other documents that purport to

            summarize the investigation or its return in whole or in part.

## **ANSWER:**

    **1.      Penn State did not conduct a criminal investigation into the alleged sexual**

**assault because the criminal investigation was under the jurisdiction of the**

**State College Borough Police Department.  With respect to the Office of**

**Judicial Affairs, Penn State responds as follows:**

   **(a)      Jane Doe, Nate Parker, Jean Celestin.  Information was also received from**

**Officer Weaver of the SCPD.**

(b)     Joseph Puzycki, Director of the Office of Judicial Affairs, had overall

responsibility for the Judicial Affairs process.

(c)     The documents gathered during the Judicial Affairs process are contained

within the files from that office which are the subject of a request for

production of documents, and accordingly reference is made to the response

to that request. The documents gathered include: Criminal complaints/State

College Police reports against Parker and Celestin, written complaint from

Jane Doe, written statements from others Yah Wuor, Nate Parker and Jean

Celestin, transcript of preliminary hearing, witness list and sentencing order.

Various letters were also received by and/or forwarded to the Judicial

Affairs office. Defendant is willing to provide more specific information

responsive to this request, but Defendant is constrained from doing so until

such time as a judicial order authorizing same is obtained, as required by the

Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.A. § 1232

(b)(2). Defendant will cooperate with all reasonable efforts by Plaintiffs to

obtain such an order.

(d)     Defendant does not understand what Plaintiff seeks in this interrogatory. As

set forth above, the Office of Judicial Affairs received information from a

variety of sources, including the State College Police Department, Jane Doe,

Mr. Parker, Mr. Celestin and students. Information through the Centre

County court system was also consulted, in that the preliminary hearing

transcript and the sentencing order were secured. Consultation was also

conducted with legal counsel for Penn State and individuals within the Student Affairs office of Penn State. Meetings were held with Jane Doe and other individuals including Peggy Lorah, Sabrina Chapman, Dr. Margaret Spear, Shirley Bishop, Officer Weaver and Diane Andrews. Information was also received from Penn State Police Services regarding their investigation into complaints by Jane Doe about harassing phone calls.

(e)    The Office of Judicial Affairs followed all standard procedures of the office with regard to handling this matter. Administrative directives were issued to those directly involved in the matter. Statements were received from the victim as well as those accused. The disciplinary process was initiated based on information received from the State College Police Department and a hearing date was scheduled when the accused indicated a desire to contest the student disciplinary charges. Jane Doe was provided with a variety of options for presentation at this hearing. At the request of Jane Doe, Penn State did not proceed with the hearing and placed further disciplinary action on hold pending conclusion of the criminal trial. Once the criminal trial concluded and the sentencing order was issued, the disciplinary process was reopened with regard to Mr. Celestin. Jane Doe again indicated that she did not wish to testify at a disciplinary hearing, and it was determined therefore to charge Mr. Celestin with a University Code of Conduct violation for "Violation of Law." Mr. Celestin was then expelled, and his degree withheld for a minimum period of two years. Mr. Parker transferred to another

institution and was found not guilty of all criminal charges, therefore no further disciplinary action was taken with regard to him.

(f)     See response to (e).

(g)     Please refer to Penn State's response to request for production of documents. By way of further response, Jane Doe requested that the accused be summarily suspended from Penn State. That option was not exercised, owing to Jane Doe's stated request not to have to testify at any hearing. Under Penn State procedure, if the accused had been summarily suspended, they would have been entitled to a hearing within five days of the summary suspension.

Also by way of further response, Penn State considered and offered to Jane Doe a variety of housing options on campus. Jane Doe requested that she be moved into off campus housing. That option was rejected by Penn State, which felt that on campus housing was a better alternative in terms of the University's ability to assist in providing safety and security to Jane Doe. Finally, in further response to Plaintiff's interrogatory regarding 'remedial measures', Plaintiff was provided, *inter alia*, with assistance from the Center for Women's Students, was offered the trauma drop option with respect to her classes, and was made aware of other University resources including medical and counseling services through University Health Services.

2.    Identify all Penn State officials or employees who received any report, complaint, notice or other communication from Plaintiff indicating that she believed she was being harassed at any time between August 1, 1999, and the present.   As to each person identified, provide the date of notification, the form and substance of the notification received, and the date and substance of the notification received, and the date and substance of the response undertaken, if any.

**ANSWER:**

**This interrogatory is objected to as over broad, and as seeking to require the making of an unreasonable investigation by Penn State.  Penn State has 24 campus locations, multiple research and cooperative extension sites, and some 15,000 full time employees.  It is impossible for Defendant to determine all Penn State officials or employees who received, or may have received, any report, notice, complaint or other communication from Plaintiff indicating that she believed she was being harassed at any time between August 1, 1999 and the present.**

**Subject to that objection, and based upon a reasonable investigation, Penn State responds as follows.**

As to the Director of the Office of Judicial Affairs, Joseph Puzycki, he was not provided by Jane Doe with any specific information regarding alleged ongoing harassment.  Mr. Puzycki did receive a complaint regarding a violation by Mr. Parker of the Administrative Directive.  Please refer to Penn State's response to Plaintiff's first request for production of documents for information regarding this complaint and Penn State's response.

Penn State's Police Services Department also received information that Jane Doe was receiving harassing phone calls.  For the details of this complaint and Penn State's response, please refer to the Police Services files produced in response to Plaintiff's first request for production of documents.

3.   If Defendant conducted any investigation into whether Plaintiff was harassed by Nate

Parker, Jean Celestin, and/or others after the alleged August 1999 sexual assault, describe

in detail the investigation conducted by Defendant, including without limitation the

following:

   a.   Identify all persons interviewed.

   b.   Identify all Penn State officials or others involved in the investigation and state

      their roles.

   c.   Identify all documents gathered.

   d.   Identify all sources of information consulted.

   e.   Describe all remedial steps considered and the reasons each was/was not taken.

   f.   Describe in detail the results of the investigation and the conclusions reached by

      Penn State.

   g.   Identify all reports, summaries, and other documents that purport to summarize

      the investigation or its results in whole or in part.

**ANSWER:**

**Please see the response and objection to interrogatory number 2 and the documents**

**referenced in that response.  By way of further response:**

**(a)   With regard to the report that Nathaniel Parker had violated the**

**administrative directive, Mr. Puzycki spoke with Yah Wuor and Jane Doe.**

**He then interviewed Mr. Parker.**

With regard to the report of harassing phone calls, Officer Jeffrey Jones interviewed Jane Doe, Gino Agostino, Brooke Mondi and Nicole Kemp.

(b)    Joseph Puzycki in his role as Director of Office of Judicial Affairs, and Officer Jeffrey Jones in his role as a police services officer. See also any other officials identified in the documents provided in response to Plaintiff's first request for production of documents.

(c)    No specific documents were gathered with regard to these investigations. Please refer to the response to Plaintiff's first request for production of documents regarding the documents relating to these investigations.

(d)    Mr. Puzycki spoke with Ms. Wuor, Jane Doe and Mr. Parker. Officer Jones spoke with Jane Doe, Ms. Agostino, Ms. Mondi and Ms. Kemp. Officer Weaver of the SCPD provided information regarding a harassing phone call received by Jane Doe on or about October 28, 1999. Penn State police service Officer Sowerby consulted with Bell Atlantic regarding putting Jane Doe's phone on trace. Officer Jones also consulted with Police Services Director Thomas Harmon regarding his decision not to file criminal charges or make a disciplinary referral against Ms. Agostino.

(e)    With regard to the violation of the administrative directive, Mr. Parker was placed on probation through Spring 2000. With regard to the report of harassing phone calls, a trace was initiated on Jane Doe's phone. With respect to the call made by Ms. Agostino, criminal charges and a disciplinary

referral were considered but not pursued based on the results of the investigation made by Officer Jones.

(f)     Please see responses above together with the documents produced in response to Plaintiff's first request for production of documents.

(g)     Please refer to the response to Plaintiff's first request for production of documents.  In particular, please see the police services files provided, together with the disciplinary files.

4.      Identify all persons who you believe have or may have information regarding any

harassment or alleged harassment of Plaintiff by Nate Parker, Jean Celestin, and/or others

after the alleged August 1999 sexual assault or any investigation of same by Defendant.

As to each person identified, provide a summary of the information s/he has or may have

about any harassment of Plaintiff.

**ANSWER:**

**Please refer to the response to interrogatory number 3 and to the documents**

**provided in response to Plaintiff's first request for production of documents.  As**

**stated therein, Mr. Puzycki has information regarding the reported violation of the**

**administrative directive by Mr. Parker.  Officer Jones and the other police services**

**individuals identified in response to interrogatory 3 have information regarding the**

**reports of harassing phone calls.  It is presumed that Plaintiff and Yah Wuor would**

**have knowledge of any alleged harassment.  Peggy Lorah of the Center for Women**

**Students may have knowledge regarding a complaint by Jane Doe of eating in the**

**same commons area used by members of the wrestling team.**

5.     If you have any information that, after Defendant issued its October 29, 1999, administrative directive, describe in detail the violation (including the identity of the violator(s)) and the response Defendant took to such a violation, including whether a charge of failure to comply was issued and whether any disciplinary action resulted.

## ANSWER:

On November 14, 1999, the Director received a phone call from Ms. Doe informing him that her roommate had looked out the window of her residence hall and seen Nate Parker in the quad area of the Pollock-Nittany-Centre (PNC) campus area.

On November 15, the Director called Ms. Doe and informed her that he had spoken to Nate Parker about being in her area of campus and that a meeting was scheduled to follow-up in person with Mr. Parker. Without waiving its objections to the discovery requests of Plaintiff which seek information Defendant is prohibited from releasing, Defendant further responds as follows.

On November 18, 1999, the Director met with Mr. Parker and his attorney in a Discipline Conference regarding the violation of the Administrative Directive. Mr. Parker stated he was frustrated because although he understood he could not have contact with Jane Doe, he stated that he did not know that he could not be in Jane Doe's residence hall area of campus. He stated he was in the PNC area of campus to set up an educational program on black student issues. He stated that he was only in the PNC area for 10-20 minutes and then left. He stated that he never saw Jane Doe or her roommate or knew they saw him while he was in this area of campus.

Mr. Parker was placed on University Probation for violating the Director's

Administrative Directive.

6.      If you contend that Penn State was precluded by applicable law from excluding Nate Parker, Jean Celestin, and/or others from its campus after Plaintiff complained to the University that they were continuing to harass her in violation of the University's instructions to have no contact with her, explain in detail the reasons why you believe Penn State was precluded from excluding Nate Parker, Jean Celestin, and/or others from the campus, including specific identification of all statutes, regulations, case decisions, and other sources of controlling law that support your contention.

**ANSWER:**

**This interrogatory assumes that Plaintiff provided Defendant with information regarding complaints of continuing harassment of her by Parker, Celestin and/or others. Defendant disagrees with that assumption and thus cannot respond further to Plaintiff's interrogatory.**

7.   Identify by title, date and other identifying information or characteristics all policies of

Penn State University relating to sexual or other harassment of students that were in

effect between August 1, 1999, and the present and describe in detail how and when Penn

State publicized those policies to its students.

**ANSWER:**

This interrogatory is objected to, with respect to the request for information

regarding policies and publicity relative to "other harassment." This request is not

relevant to the instant matter nor is it reasonably calculated to lead to the discovery of

relevant information. Further, the phrase "other harassment" is vague and undefined.

Subject to the objection, Defendant responds as follows:

(a)   With respect to policies, please refer to the policies produced in response to

request for production of documents.

(b)   With respect to publicizing those policies:

(i)   Please refer to the response to Interrogatory 9;

(ii)   There are a variety of programs presented to the general student

population. One presentation is that made to all students

participating in FTCAP (Freshman Testing and Advisory). Another

is a program entitled "Real Life Choices," which is presented during

the first week of classes and addresses issues of sexual and

relationship violence;

(iii)   Publications are distributed to the students which relate to those

policies and/or the topics of those policies. These include "Housing

and Residence Life Daybook," a publication presented to all residence

hall students; "Policies, Safety and U," a publication on crime and

safety provided to all Penn State prospective students and parents,

University students, faculty and staff; "Crime Victims Services – A

Guide for Penn State Students and Employees," which is a brochure

available to students provided by Penn State Police Services; "Guide

for Sexual Assault Victims," a brochure available to students

produced by the Office of Student Affairs; "Sexual Harassment

Brochure," a brochure which is distributed to all employees at all

campus locations.  Brochures are also sent for placement in

designated student areas at all campus locations;

(iv)   The Diversity Support and Education Center, which is part of the

University's Affirmative Action Office, regularly does workshops on

the topic of sexual harassment which include the University's policy.

Attached hereto as Bates #1293 to 1296 is a listing of programs

presented through this Center for the period August 17, 1998 through

March 12, 2002;

(v)   Student Guide to General University Policies and Rules;

(vi)   Web-sites accessible and available to students include the following:

(1)   University's policy on Sexual Harassment on-line –
http://guru.psu.edu/policies/AD41.html

(2)   University's Policy on Nondiscrimination and Harassment on-
line – http://guru.psu.edu/policies/AD42.html

(3)     University's Policy on Sexual Assault on-line –
        http://guru.psu.edu/policies/AD12.html

(4)     Policy Statement on Sexual Assault and Abuse – Judicial
        Affair's Website (site is referenced on JA Homepage) –
        http://www.sa.psu.edu/ja/policyexerpts.html#assault

(5)     Judicial Affairs Location to Download the Student Guide to
        General University Policies and Rules.  Once downloaded,
        pages 19 and 20 –
        http://www.sa.psu.edu/ja/procedures.html

(6)     Judicial Affairs Location to Download the Procedures for the
        Discipline System.  Once downloaded, pages 1 and 2 –
        http://www.sa.psu.edu/ja/procedures.html

(7)     University Health Services Website page focused on Sexual
        Assault (site is referenced on UHS Homepage)  –
        http://www.sa.psu.edu/uhs/assault.htm

(8)     University Police – Crime Statistics Report on-line –
        http://www.psu.edu/dept/police/

(9)     Center for Women Students (site is referenced on CWS
        homepage) –
        http://www.sa.psu.edu/cws/images/sexualassautlinform
        ation.html

8.  If Penn State has changed its policies relating to sexual harassment or the University's response to sexual harassment since it first received a complaint from Plaintiff relating to the harassment by Nate Parker, Jean Celestin, and others:

   a.  State the dates on which each change was made and the effective dates of any such changes.

   b.  Describe in detail the nature of the changes in your policy and the reasons for any such changes.

   c.  Identify by title, date, and other identifying information or characteristics each changed policy as propagated by Penn State.

   d.  Describe how and when Penn State publicized those changes to its students.

**ANSWER:**

**(a)   With respect to AD41, it is believed that certain changes were approved in December 1999 and implemented effective January, 2000. The changes are highlighted in yellow on the copy of AD41, attached hereto as Bates #1297 to 1299.**

**(b)   Added – last part of first full paragraph on p. 2 (starting with "under such circumstances and ending with "should be documented") concerning consensual relationships - The reason for this change was to define more specifically the responsibility of employers.**

**Added – second paragraph, last sentence under Resolution of Sexual Harassment Complaint. (Starting with "In cases where and ending consistent responses to issues across units.") This was added to give further guidance to administrators and other University personnel who may receive a complaint of sexual harassment.**

**Added – Last line of next to last paragraph in Resolution of Sexual Harassment Complaint section ("The Complainant will be informed of the corrective measures taken.") This change followed legal recommendations.**

**Changed – in the Disciplinary Sections section "will be imposed" replaced "may be imposed". This change was made to make the policy stronger.**

**(c)   See (a) and (b) above.**

**(d)   The policy as changed was publicized in the manner described in response to Interrogatories 7 and 9.**

9.  If Penn State has an office responsible for receiving complaints relating to compliance with Title IX, state the following:

   a.  The date that office was first established, or, if an already established office, the date the office first became responsible for Title IX.
   b.  Whether that office has continued in existence since its creation (and if not state all dates when no such office was in operation).
   c.  The person responsible for that office.
   d.  Describe in detail all actions and dates of such actions taken by Penn State to publicize to students, faculty members, employees, or others in existence and identity of that office.

**ANSWER:**

   (a)  **The Affirmative Action Office at Penn State generally deals with gender discrimination issues. It was established in January of 1973.**

   (b)  **The office has continued to exist since its creation in 1973.**

   (c)  **Carmen Borges is the Interim Director of the office since June 2001.**

   (d)  **The Affirmative Action Office maintains a web site which can be accessed from both the administration and the diversity sections of the Penn State home page http://www.psu.edu. The direct address of the Affirmative Office site is http://www.psu.edu/dept/aaoffice.**

   **Periodically, the University's policy on fair employment practices is published in the Intercom, an internal communications medium. Intercom is sent to all regular employees at all campus locations. Statements regarding the policy on persons with disabilities, Vietnam era and disabled veterans, complaint resolution procedures, and affirmative action are published.**

   **The Affirmative Action Office distributes policy statements and federal/state nondiscrimination posters for placement in designated areas at all campus locations and each administrative area at the University Park Campus. The Affirmative Action Office distributes a sexual harassment brochure to all employees at all campus locations. Brochures are also sent for placement in designated student areas at all campus locations. The latest distribution was done on October 23, 2001. The brochure contains information about the Affirmative Action Office and how to file a complaint.**

   **Staff of the Affirmative Action Office continually provide training and participate in student, faculty and staff programs and activities to**

disseminate information about the functions of the office and what to do about harassment and discrimination complaints.

See also, the response to Interrogatory #7 herein.

10.     If Penn State has received any complaint of sexual or other harassment from a student, faculty member, employee, or other person, other than complaints made by Plaintiff, separately with respect to each of the complaints within the scope of the description in that interrogatory, state the following:

   a.     The name of the complaining party and whether the complaining party was a student, faculty member, employee, or other person (and if an "other person" state the relationship of that person to Penn State)
   b.     The nature of the harassment complained of.
   c.     The date(s) when the complaint was received by Penn State.
   d.     The person(s) at Penn State who received the complaint(s).
   e.     The person(s) at Penn State responsible for investigating the complaint(s).
   f.     The person at Penn State responsible for acting upon or taking steps to remedy the complaint(s).
   g.     All steps taken to protect the complaining party from any further or continuing harassment.
   h.     All steps considered but not taken or implemented for the purpose of protecting the complaining party against further harassment and the reason such steps were not taken.
   i.     All steps taken to discipline or punish the harasser.

**ANSWER:**

       This Interrogatory, together with the accompanying instructions, is objected to for each and all of the following reasons:

               This Interrogatory is overbroad, as it seeks information extending over a 10-year period.  Further, it seeks information not only with regard to sexual harassment, but also with regard to any 'other" form of harassment. Further, it is overbroad as requesting information relating not only to students, but also as to faculty members, employees, or other persons.

               This Interrogatory seeks to require Defendant to make an unreasonable investigation, and to cause undue burden and expense upon the Defendant.  It also seeks only to annoy and harass the Defendant, as Plaintiff makes no effort to reasonably limit the scope of her inquiry.  Defendant has 24 campus locations, 66 co-operative extension offices, multiple research sites, 80,000± students and 15,000± full-time employees.  It is impossible for Defendant, given the size and scope of the organization, to provide the information requested.

               With respect to student records, the Office of Judicial Affairs receives approximately 1,500 student discipline complaints annually.   On average,

these records are maintained five years.  Thus, it is estimated that there are approximately 7,500 files that would have to be reviewed in order to provide the requested information.  The Office of Judicial Affairs does not maintain a database that permits electronically the isolation and retraction of the specific information requested.  Thus, a manual review of the files would be required to provide the information requested.

With respect to student records, Defendant also objects on the basis that it is prohibited from providing the information requested in accordance with FERPA.  Defendant is willing to provide more specific information responsive to this request, but Defendant is constrained from doing so until such time as a judicial order authorizing same is obtained, as required by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C.A. § 1232 (b)(2).  Defendant will cooperate with all reasonable efforts by Plaintiffs to obtain such an order.

Defendant also asserts that provision of the information requested would violate the privacy rights of the students and/or victims identified in these files.  Finally, Defendant objects on the basis that whatever potential relevance such information may have to the instant matter is outweighed by the effect which disclosure of the information would have on the Defendant's ability to maintain the confidentiality and integrity of the student discipline process.

With respect to employment records, Defendant objects to providing responses that would violate the privacy rights of the employee involved.  Defendant also objects on the basis that whatever relevance such information has to the instant matter is outweighed by the harm which disclosure of the information would have on the Defendant's ability to maintain the confidentiality and integrity of the process for the handling of sexual harassment complaints.

Subject to the above, however, and without waiving the objections set forth, Defendant does provide herewith information regarding sexual harassment complaints received by the Affirmative Action Office over a period extending from 1998 to the END OF 2001.  This office maintains an electronic database that permits the retrieval of this information.  This information is provided with redactions of identifying information where appropriate.  See documents produced, Bates #1300 to 1473.

11. Have you ever taken any of the following steps after receiving a complaint of sexual or other harassment from a student, faculty member, employee, or other person (state yes or no separately for each step listed below and if yes, identify the complaining parties, alleged harasser, and nature of the harassment complained of):

    a.    Suspended the alleged harasser from employment with Penn State or attendance at Penn State as a student.

    b.    Excluded the alleged harasser from any part or all of a Penn State campus.

    c.    Provided a non-student escort to accompany the complaining party to class, work, or university facilities.

    d.    Restricted or monitored the alleged harasser's movement on campus.

    e.    Required the alleged harasser to attend counseling on sexual harassment

    f.    Informed the alleged harasser as to what conduct is appropriate.

    g.    Prohibited retaliation for reporting the alleged sexual harassment.

**ANSWER:**

This interrogatory is objected to for the reasons set forth in response to interrogatory #10, all of which are incorporated herein by reference.

By way of further response, with regard to students, all discipline cases including matters of sexual harassment are managed on a case-by-case basis. As such , providing a response to this interrogatory would require locating, identifying and reviewing all existing past and present discipline files in order to detail the specific incident and any actions taken. As a general matter, the Office of Judicial Affairs could impose one or more of the sanctions referenced in this interrogatory if a student was found responsible for misconduct and the circumstances of the case warranted such discipline.

By way of further response, with respect to employees, please refer to the AAO contact logs provided in response to interrogatory #10. With respect to cases reported to the AAO office, Defendant further responds as follows:

See, generally, those additional contact logs attached hereto as Bates #1286 to 1292.

(a)     Yes. Shrikrishna Singh was suspended from employment with Penn State, and it is believed that such action took place in or about 1996. Singh filed suit against Penn State, and as such this case is a matter of public record available for review by Plaintiff. See Singh v. Penn State, U.S. District Court for the Middle District of Pennsylvania, No. 97-1462.

(b)     Yes. This action was taken by Defendant against Dr. Lance Shotland. Litigation involving Dr. Shotland was filed in the United States District

Court for the Middle District of Pennsylvania at No. 4:CV-97-650.  As such, this case is a matter of public record available for review by Plaintiff.

(c)     No such instances are recalled at the present time.  Defendant's investigation is continuing.

(d)     Yes.  Such action was taken with regard to Dr. Lance Shotland.  See 11(b) above.  Such action was also taken with regard to the employee who is the subject of AAO contact sheet, Bates #1286.

(e)     Yes.  Defendant respectfully declines to provide any further response for the reasons set forth in its objection to interrogatory #10.

(f)     Defendant does not understand this request, which, as phrased, is vague and ambiguous.

(g)     With respect to the AAO, such a directive is standard practice with regard to all complaints.

12.    If you are aware of any case in which a person accused of sexual or other harassment was ordered by Penn State to have no further contact with the complaining party for some period of time and subsequently had such contact, directly, or indirectly, in violation of Penn State's instructions not to do so, then separate as to each such case known to you state the following information:

     a.     The identity of the complaining party.

     b.     The identity of the alleged harasser.

     c.     The nature of the harassment complained of

     d.     The date the complaint was received.

     e.     The date the alleged harasser was instructed to cease further contact with the complaining party.

     f.     When and how Penn State learned that its instruction to cease further contact had been disobeyed.

     g.     What steps Penn State took in light of the violation of its instruction, and the reasons for those steps.

**ANSWER**:

     **With respect to the matters handled by the Office of Judicial Affairs, this request is objected to for the reasons set forth in response to interrogatory #10, all of which are incorporated herein by reference.**

     **With respect to matters handled by the AAO, the answer to this interrogatory based on information currently known is yes.   Please refer to previous responses with regard to Dr. Lance Shotland, as well as AAO contact sheets, Bates #1300 -- 1373.**

13.     If you are aware of any case in which a Penn State student has been subject to criminal charges and bound over in a preliminary hearing, then separate as to each such case known to you state the following information:

    a.     The identity of the student charged.

    b.     The nature of the criminal charges.

    c.     The date of the alleged criminal incident and preliminary hearing.

    d.     Any discipline imposed by Penn State as a result of the alleged criminal incident.

    e.     If no disciplinary action was taken by Penn State, the reason why.

    f.     The date of the disciplinary action taken by Penn State.

    g.     Whether some or all of the discipline was imposed prior to the disposition of the criminal charges, and if so, which disciplinary actions were taken prior to such disposition.

    h.     Whether some or all of the discipline was deferred until prior to the disposition of the criminal charges, and if so, which disciplinary actions were deferred and why.

    i.     The process, if any, leading up to the discipline imposed by Penn State.

    j.     Whether the accuser or victim in the criminal case testified before a Penn State disciplinary body or gave information about the criminal incident in a Penn State investigation prior to the disposition of the criminal charges.

**ANSWER:**

**This request is objected to for the reasons set forth in response to Interrogatory #13.**

McQUAIDE, BLASKO, SCHWARTZ,
FLEMING & FAULKNER, INC.

Dated:  June 19, 2002     By:_____

    James M. Horne, Esquire
    I.D. No. 26908
    811 University Drive
    State College, PA  16801
    (814) 238-4926

    Attorneys for Defendant

# Women's Law Project

125 South Ninth Street
Suite 300
Philadelphia, PA 19107

T: 215.928.9801   F: 215.928.9848
W: www.womenslawproject.org
E: info@womenslawproject.org

**BOARD OF TRUSTEES**
Robin Coward (Chair)
Rebecca Alpert
Joni Berner
Catherine Carr
Jennifer R. Clarke
Hope A. Comisky
Julia A. Conover
Alisa Field
Abbe Fletman
Mindy Friedman
Judith E. Harris
Wynn Weissman Harris
Steven K. Ludwig
Lynn A. Marks
Joann Mitchell
Mary Platt
Denise Rawles
Barbara S. Rosenberg
Carol Nelson Shepherd
Martha Swartz
Ruth Tanur
Cynthia R. Thompson
Carol E. Tracy (ex-officio)
Elizabeth Werthan
Thomas Zemaitis

**EXECUTIVE DIRECTOR**
Carol E. Tracy

**MANAGING ATTORNEY**
Terry Fromson

**ASSOCIATE DIRECTOR**
Dabney Miller

**SENIOR STAFF ATTORNEY**
Susan Frietsche

**STAFF ATTORNEYS**
David S. Cohen
Astra Outley

**PROGRAM MANAGER**
Debra L. Rubin

**PROGRAM ASSOCIATE**
Kathleen Kaib

**ACCOUNTANT**
Grace Knight

**OFFICE MANAGER**
Debi Morrison

**ADMINISTRATIVE ASSISTANT**
Katherine Suter



A Women's Way Agency

July 3, 2002

BY FACSIMILE AND FIRST CLASS MAIL

James M. Horne
McQuaide Blasko
811 University Dr.
State College, PA  16801-6699

Re:   *Doe v. Pennsylvania State University*
       4:CV-02-0369

Dear Mr. Horne:

We have reviewed your interrogatory and document production responses thoroughly and write to call your attention to certain deficiencies and to request that you promptly cure them.  The discrepancies are as follows:

Interrogatory Responses

**Interrogatory 1b:**  We asked you to identify *"all* Penn State officials or others involved in the investigation" (emphasis added) of Jane Doe's alleged sexual assault.  You responded that Joseph Puzycki had "overall responsibility."  As the interrogatory was not limited to overall responsibility, please identify all Penn State officials or others who worked with Mr. Puzycki or anyone else in any manner on this investigation.

**Interrogatory 1e:**  We asked for all remedial steps considered during the investigation into Jane Doe's alleged sexual assault and the reason each was or was not taken.  You responded by outlining the procedure of the investigation.  Your answer to interrogatory 1g touches upon remedial steps considered, but that answer does not appear to be a complete answer to interrogatory 1e.  Please answer interrogatory 1e with a list of remedial steps considered and why each one was or was not taken.

**Interrogatory 2:**  We asked you to identify all officials or employees who received "any report, complaint, notice, or other communication" from Jane Doe about harassment.  We disagree that Penn State's multiple locations and the size of its workforce justify the incomplete response given.  However, for the purpose of

A copy of the official registration and financial information may be obtained from the Pennsylvania Department of State by calling toll free 1.800.732.0999.
Registration does not imply endorsement.



James M. Horne
July 3, 2002
Page 2

this interrogatory, to address multiple locations, we are willing to limit the interrogatory to the University Park campus. Working within that limitation, we believe that your response is incomplete. First, you have limited your response to instances of Mr. Puzycki receiving "specific information regarding alleged ongoing harassment"; however, the question was not limited to "specific information" but asked for "any report" whatsoever. Second, your answer does not include information referred to in your response to question 4 about Jane Doe complaining to a Penn State employee (Peggy Lorah) about harassment. You have a responsibility to interview Penn State employees known to have information about this interrogatory to determine what information they can provide that is responsive. Third, we refer you to Jane Doe's victim's statement at P-46, her letter at P-95, President Graham Spanier's email indicating that he received her first statement at D-519, and various other documents produced by both parties indicating that Jane Doe reported harassment to Penn State employees or officials, none of which are acknowledged by your answer to this interrogatory. Fourth, the institutional use of email vastly decreases the burden involved in answering this (and other) interrogatories because mass emails can be sent asking for information related to this interrogatory, subject of course to the confidentiality agreement entered into between the parties. Please supplement your answer with all reports received by Mr. Puzycki, any information Ms. Lorah or any other University Park Penn State employee received from Jane Doe, and any other reports that are responsive to the question asked.

Interrogatory 6: As explained with respect to interrogatory 2 and verified by the documentation discussed above, Penn State does not dispute that Jane Doe complained of harassment. Therefore, your response is not tenable. A complete response to the interrogatory is requested.

Interrogatory 7: In this interrogatory as well as numbers 10 through 12, we asked for information regarding "other harassment." You object to the request as irrelevant and the phrase as vague and undefined. First, we offer you a definition of "other harassment": in the context of the question, it is harassment that is not based on sex, including harassment based on race, disability, sexual orientation, or ethnicity. Second, Penn State's policies and actions with respect to "other harassment" are relevant to this matter because those policies and actions may shed light on Penn State's capabilities of protecting students from harassment and on whether Penn State's actions with respect to sexual harassment generally and Jane Doe's situation specifically were deficient. For example, if a student complaining of race-based harassment were provided with 24-hour adult security in a similar situation as Jane Doe's, this may be evidence of discriminatory treatment of Jane Doe's complaints. Please supplement your answer to these interrogatories about "other harassment" with these two clarifications in mind.

Interrogatory 9a: This interrogatory asked for the date your Title IX office first became responsible for Title IX, which has not been provided. Please supplement.

Interrogatories 10-12: These interrogatories ask for information about past complaints of sexual or other harassment, Penn State's responses to those complaints, and any violations of no-contact orders. You objected that the interrogatories were burdensome and overbroad because they extended over a ten year period and that they were vague because they sought information about "other harassment." We have addressed your objection about "other harassment" above in

James M. Horne
July 3, 2002
Page 3

response to interrogatory 7.  As for the other objections, we agree at this time to limit the
timeframe to the time period since (and including) 1998.  If you have approximately 1500
student discipline complaints each year, only a fraction of the 6000 plus covered in that time
period will involve harassment.  A quick scan of the files should be able to exclude the incidents
that do not involve harassment.  We do not believe that this analysis would be burdensome, as a
reasonable review of the files could consist of a quick glance at each file's indication of the
subject matter and, if not about harassment, nothing further.  Moreover, regarding your non-
FERPA privacy concerns, under our confidentiality agreement, no information you provide will
be released beyond the terms of that agreement.  Also, as you have done with the information
you have already provided, you can redact any identifying information so that the student's
privacy rights are not violated.  In sum, the information you provided concerning employees is
responsive, but the lack of information concerning students is not.  Please conduct the
appropriate review of your files and supplement your responses accordingly.

Interrogatory 11f:  This interrogatory asked you to identify situations in which you have
informed an alleged harasser as to what conduct is appropriate.  You did not answer because you
did not understand the request.  By way of further explanation, the request seeks information
about instances in which Penn State has told an alleged harasser how to behave in order to avoid
further incidents with the victim.  Merely because there are a variety of ways in which Penn State
may have done this does not mean that the request is vague.  Please supplement.

Interrogatory 13:  This interrogatory requests information about cases in which a student was
bound over after criminal charges were brought.  You responded that you object for the same
reasons identified in interrogatory 13.  We assume that you meant that you object based on the
reasons set forth in response to question 10, not 13 (as that is self-referential and not
informative).  If we are not correct in that assumption, please clarify.  If we are correct, for the
same reasons specified with respect to interrogatories 10 through 12, we request that you
supplement your answer with specific responses.  We are willing at this time to limit our
timeframe to the time period since (and including) 1998.  Although we understand that Judicial
Affairs does not have an electronic database, a manual review presumably can be quickly and
reasonably done to eliminate all cases in which a student was not bound over after being subject
to criminal charges.  We assume that the overwhelming majority of cases of student discipline do
not involve criminal charges for which the student is bound over and that separating out these
cases can be done by quickly scanning the subject matter of the file.  Likewise, asking Judicial
Affairs officers, security employees, or legal representatives of the University could uncover this
information, since employees may recall cases involving criminal charges.  Please supplement
accordingly.


Document Requests

Requests 2 and 3:  These requests seek documents related to the investigation of the alleged
assault of Jane Doe and the subsequent harassment.  You objected to them for the same reasons
stated in interrogatories 1, 10, 11, and 12.  We refer you to our responses to those objections
above.  Please supplement accordingly.

James M. Horne
July 3, 2002
Page 4

Request 4:  This request seeks Penn State policies related to sexual or other harassment.  You objected to the term "other harassment."  Please see our comments with respect to interrogatory 7 and supplement accordingly.

Request 5:  This request seeks Penn State documents relating to past complaints of sexual or other harassment, your responses to those complaints, and any violations of no-contact orders.  You objected to the scope of this request.  Please see our comments with respect to interrogatories 10 through 12 and supplement accordingly.

Request 6:  This question asked for documents relating to criminal charges for which a student was bound over.  You objected by referring to interrogatory 13.  Please see our comments with respect to interrogatory 13 and supplement accordingly.

Request 7:  This question asked for documents related to remedial actions in harassment cases.  You objected to the scope of this request.  Please see our comments with respect to interrogatories 10 through 12 and supplement accordingly.

Request 8:  This question asked for all documents reviewed, considered, or relied upon in preparing your interrogatory answers.  You indicated that all documents have been produced in response to the specific request.  We cannot determine from this answer whether you have given every document that you reviewed in answering the interrogatories, even if the document was *not ultimately used* in answering the interrogatory.  Please supplement or answer unequivocally that you have provided all documents reviewed, considered, or relied upon, even if not ultimately used or responsive to a particular request.


Privilege Log

Entries 470-471 and 504-505:  These entries refer to two emails between Janis Jacobs and "Multiple PSU."  You have indicated in your document request responses that Janis Jacobs is the Vice President for Administration.  Without knowing who "Multiple PSU" refers to, we cannot evaluate your claim for attorney/client privilege.  As it now stands, it appears the documents are not privileged because they are merely communications between one PSU administrator and other PSU people.  Please clarify or produce the documents.

Entry 472-473:  This entry refers to an email between Bill Mahon and "Multiple PSU."  Bill Mahon is PSU's spokesperson.  Without knowing who "Multiple PSU" refers to, we cannot evaluate your claim for attorney/client privilege.  As it now stands, it appears the document is not privileged because it is merely a communication between one PSU employee and other PSU people.  Please clarify or produce the document.

Entry 491-492:  This entry refers to an email between an unidentified person and Bill Mahon.  Bill Mahon is PSU's spokesman.  Without knowing who wrote the document, we cannot evaluate your claim for attorney/client privilege.  As it now stands, it appears the document is not

James M. Horne
July 3, 2002
Page 5

privileged because it is merely a communication between an unidentified person and a PSU employee. Please clarify or produce the document.

Entries 509 and 534-535: These entries indicate that "Multiple PSU" received the two documents from Wendell Courtney, a McQuaide Blasko attorney. You claim attorney/client privilege. Without knowing more about who received the document it is impossible for us to determine whether the privilege validly exists. Under *Upjohn Co. v. United States*, 449 U.S. 383 (1981), the intent of the attorney sending the document is determinative. A document sent too broadly might indicate that it was not intended to be confidential. Please detail the recipients so we can better assess your claim of privilege.

Entry 536-537: This entry refers to an email between Joseph Puzycki and "G. Schultz." Nowhere in your documents have you indicated who "G. Schultz" is. Possibly G. Schultz is Gary Schultz, the Senior Vice President for Finance and Business/Treasurer. If so, the email is merely an email between two PSU employees and is not protected by attorney/client privilege. Please clarify or produce the document.

Entries 555-556 and 560: These entries refer to communications between Graham Spanier and Janis Jacobs. Both are merely emails between two PSU employees and are not protected by attorney/client privilege. Please further clarify or produce the document.

Entry 586-838: This entry indicates that multiple emails were sent from "Multiple PSU" to "Multiple PSU." Part of the privilege you claim is the attorney/client privilege. If these emails were from PSU employees to other PSU employees, they are not protected by the privilege. Only documents from or to attorneys of PSU are privileged. Please detail each document, the author, and the recipient so we can adequately assess your claim of privilege.

Your prompt attention to addressing these deficiencies is requested.

Very truly yours,

Terry L. Fromson

TRANSMISSION VERIFICATION REPORT

TIME : 07/03/2002 14:58
NAME : WOMENS LAWPROJECT
FAX  : 2159289848
TEL  : 2159289801

| | |
|---|---|
| DATE,TIME | 07/03  14:56 |
| FAX NO./NAME | 1814234562003 |
| DURATION | 00:02:19 |
| PAGE(S) | 06 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# Facsimile Cover Sheet

**Women's Law Project**
**125 South 9th Street, Suite 300**
**Philadelphia, PA 19107**
**Telephone: (215) 928-9801**
**Fax: (215) 928-9848**

Date: 7/3/02

Number of pages including cover sheet ___6___

To: _James M. Horne_

From: _Tony Fromso_

Phone:
Fax Phone: 814 – 234 – 5620
cc:

Phone: (215) 928-9801
Fax Phone: (215) 928-9848

---

**REMARKS:**

☐ Urgent      ☐ For your review      ☐ Reply ASAP      ☐ Please Comment

**Please contact the Women's Law Project if all pages are not properly transmitted.**

The information in this facsimile transmittal is intended only for the use of the addressee and may contain material that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, any dissemination, distribution or copying of this document is prohibited. If you have received this transmission in error, please notify us immediately by telephone, destroy copies and return the original to us at the above address via the U.S. Postal Service at our expense. Thank you.          *dam c://1998/admin/fax.doc*

# McQUAIDE BLASKO

ATTORNEYS AT LAW

**811 University Drive, State College, Pennsylvania 16801-6699**
600 Centerview Drive, Suite 5103, Hershey, Pennsylvania 17033-2903

**(814) 238-4926   FAX (814) 234-5620**
**(717) 531-1199   FAX (717) 531-1193**
www.mcquaideblasko.com

Reply to: State College Office

Direct 235-2206

July 17, 2002

Terry Fromson, Esquire
Managing Attorney
Women's Law Project
125 S. Ninth Street, Suite 300
Philadelphia, PA 19107
(Fax:  (215) 928-9848)

**Re:**   <u>**Jane Doe v. The Pennsylvania State University**</u>, No. 4:CV-02-0369

Dear Ms. Fromson:

I am writing in response to your letter of July 3, 2002, directed to Jim Horne of this office. I will respond, point for point, to your perceived deficiencies in Penn State's discovery responses to date. Prior to doing so, however, I must state that it seems likely that some, if not all, of your perceived objections to the discovery responses will be addressed by virtue of the production of the FERPA-privileged documents regarding Celestin and Parker. You should have received a letter sent by me to Messrs. Parker and Celestin notifying them of Penn State's intention to comply with the Court's Order. This notification is required by FERPA. I advised them of a date of July 27, 2002 for our intended compliance with the document request. Thus, it is our suggestion that you first review those documents and thereafter reassess whether you still perceive the discovery responses to be incomplete or inadequate. That said, I will address your concerns point-by-point. Please understand that our investigation is ongoing and we reserve the right to amend or supplement our responses in the event subsequently-developed information makes it appropriate to do so.

---

McQUAIDE, BLASKO, SCHWARTZ, FLEMING & FAULKNER, INC.

John W. Blasko   Thomas E. Schwartz   Grant H. Fleming   R. Mark Faulkner   David M. Weixel   Steven S. Hurvitz   James M. Horne   Wendell V. Courtney   Darryl R. Slimak   Mark Righter   Daniel E. Bright
Paul J. Tomczuk   Janine C. Gismondi   Maureen A. Gallagher   John A. Snyder   April C. Simpson   Allen P. Neely   Charles Eppolito, III   Katherine V. Oliver   Katherine M. Allen
Wayne L. Mowery, Jr.   Pamela A. Ruest   Michelle S. Katz   Ashley Himes Kranich   Chena L. Glenn-Hart   Richard K. Laws   John H. Taylor   Michael J. Mohr   Livinia N. Jones

John G. Love (1893-1966)   Roy Wilkinson, Jr. (1915-1995)   Delbert J. McQuaide (1936-1997)



**McQuaide Blasko**                                          ATTORNEYS AT LAW

Terry Fromson, Esquire
July 18, 2002
Page 2

**Response to Interrogatory Comments**

      Interrogatory No. 1(b). As we stated in our response-in-chief to Interrogatory No. 1, Penn State did not conduct a criminal investigation of the alleged sexual assault complained of by Ms. Parker. Rather, that investigation was conducted by the State College Borough Police Department. To the extent Penn State had involvement in responding to the Plaintiff's complaints of sexual assault, that involvement was handled by the Office of Judicial Affairs which is under the leadership of Joseph Puzycki. To the extent there were other persons at Penn State who were involved in one way or another in the Judicial Affairs' handling of that claim, those persons names will be contained within the FERPA-privileged student disciplinary files that we are intending to produce to you, in addition to appearing on the documents already produced to you. We are not aware of individuals whose names do not appear on those documents who were involved with the claims.

      Interrogatory No. 1(e). The range of official action available to the Office of Judicial Affairs in this case is summarized in an E-mail from Janice Jacobs to Joseph Puzycki dated December 10, 2001 (Bates Stamped pp. 807-809) and includes the possible sanctions of disciplinary warning, disciplinary probation, restitution/loss of privilege, temporary expulsion, deferred expulsion, indefinite expulsion, interim expulsion and permanent expulsion. Interim, or summary expulsion was not a viable option because such an official action would have required the convening of a hearing within five days and Ms. Parker had stated to Mr. Puzycki that she would not participate in such a proceeding despite a variety of options for such participation having been offered to her. The information related to the available sanctions can also be viewed on the internet at the Judicial Affairs website accessible through the main Penn State website.

      Interrogatory No. 2. We respectfully disagree with your assessment and we renew the objections we made in responding to Interrogatory No. 2. That said, we feel it is likely that the supplemental document production will address your concerns with respect to this response. We have specifically avoided speaking directly with Plaintiff's physicians, counselors and therapists, however, your statements on pages 1 and 2 of your letter of July 3, 2002, suggest that you believe it is appropriate for us to do so. This is somewhat at odds with the fact that you have apparently redacted certain medical records entries (p. 0025), presumably on the basis that you consider the information to be confidential. We disagree with your presumed assertion of a right to confidentiality in this respect because we believe your clients has placed her mental status squarely at issue. Nevertheless, we are seeking to propose a reasonable framework to address your objections to Penn State's responses to your discovery requests. Therefore, we have included herewith with appropriate authorizations. We request that you have your client sign

Terry Fromson, Esquire
July 17, 2002
Page 3

them and them notarized.  Upon receipt of the signed authorizations, we will undertake to communicate directly with Plaintiff's healthcare providers, therapists and counselors to determine whether there is any additional discoverable information responsive to your discovery requests.  We respectfully disagree with your suggestion that the existence of E-mail alleviates and burden imposed by the breadth of your discovery response.  To the contrary, issuing a broadcast E-mail seeking the information that you request would undoubtedly impinge upon your client's desire to keep her identity confidential during this proceeding.  Thus, we suggest you review the supplemental discovery requests, and have your client provide us with a signed authorization allowing us to speak directly with your physicians, healthcare, and mental health therapists and we will undertake that limited investigation upon receipt of the signed authorizations should you deem it to be necessary after receipt of the supplemental document production.

Interrogatory No. 6.  We rest on our objection.  Your interrogatory as phrased improperly assumes that Penn State received credible information that Messrs. Parker and/or Celestin were "continuing to harass Ms. Parker in violation of the University's instructions to have no contact with her."  This assumption is unsupported by the facts and, therefore, this interrogatory cannot be answered.  There was one occasion, referenced and described in our previous discovery responses, wherein Mr. Parker was found to have been within a quadrant of campus that Ms. Parker was also within.  This was determined to have been a violation of the then-existing administrative directives, and Mr. Parker was sanctioned by the Office of Judicial Affairs.  That incident is the only incident of which PSU is a aware that could arguably be covered by your request as phrased.

Interrogatory No. 7.  Although you offer us a definition of "other harassment," in reality you seem to be suggesting examples of what you contend "other harassment" is.  You have provided a closed definition.  In any event, you have already been provided with copies of or references to the known Penn State policies that address harassment.  Please note that Penn State expects that its students will comply with all applicable federal, state and local law, including laws relating to harassment.  (See, Code of Conduct, § 16, http://www.sa.psu.edu/sa/policyexcerpts.html#conduct).  Consequently, your question as phrased potentially brings into play the entire panoply of applicable federal, state and local law, the text of which is equally available to you.  Although you reference, with respect to Interrogatory No. 7, the relevance of Penn State's "actions" with respect to "other harassment," nothing about Interrogatory No. 7 requests information concerning Penn State's action other than with respect to the dissemination and/or publication of those policies, which information was already provided to you in our prior discovery responses.

**MCQUAIDE BLASKO**                              ATTORNEYS AT LAW

Terry Fromson, Esquire
July 17, 2002
Page 4

Interrogatory No. 9(a). Actually, you asked us for the date that the office responsible for receiving complaints relative to compliance with Title IX was established. We advised you that that office was the Affirmative Action Office, and it was established in 1973. See, Answer to Interrogatory 9(a).

Interrogatory Nos. 10 through 12. We respectfully disagree that the review of 6,000+ student discipline files constitutes a "quick scan" or would otherwise be unburdensome. Although you unilaterally predict that only a fraction of the 6,000+ discipline complaints will involve harassment, as you know that determination cannot be made without manually reviewing each incident. Furthermore, we are advised that, in order to make a determination with respect to the chronological events or the disposition of any given student's case, it would be necessary for Mr. Puzycki or a comparably experienced PSU official to perform a detailed review of the case notes, which are not always organized in the fashion that they are in this matter. Consequently, contrary to your prediction, it would seem that considerable time would be required to review, flag, copy, redact, and analyze the files.

We are further advised that the Office of Judicial Affairs does not have available personnel sufficient to perform this task in addition to their usual duties. Therefore, we will agree to have a paralegal from our office manually review the student discipline complaints for the purposes of identifying complaints that involve harassment (Interrogatory Nos. 10 through 12) and for the purposes of developing information, if available, concerning cases in which a student was bound over after criminal charges were filed (Interrogatory No. 13) upon agreement by you to compensate us for the paralegal's time spent at an hourly rate of $75. Please affirmatively advise us of your willingness to pay for the reasonable costs of this review.

Interrogatory 11(f). Following review of your explanation of this interrogatory, the query remains somewhat ambiguous. It would seem that the query is best answered by responding that Penn State advises all members of its community as to expectations concerning conduct by dissemination and publication of its policies through the mechanisms earlier communicated to you in these discovery responses. Moreover, Penn State expects students not to abide not only by its own policies, but also with all applicable federal, state and local laws. Knowledge of, and expectation of compliance with the laws of the land is presumed for students, as it is for members of the general public.

To the extent you are seeking a manual review of the Judicial Affairs' files, we incorporate our response to your complaints to PSU's Answers to Interrogatory Nos. 10 through 12.

**McQuaide Blasko**                                              ATTORNEYS AT LAW

Terry Fromson, Esquire
July 17, 2002
Page 5

   <u>Interrogatory No. 13</u>.  Please see responses to Interrogatory Nos. 10 through 12 above.

### Response to Request for Production of Documents Comments

   <u>Document Request Nos. 2 and 3</u>.  You are referred to the supplemental document production which we believe will address your concerns and/or objections to this response. Additionally, please see our response to your complaints to the answers to Interrogatory Nos. 10 through 12.  We are willing to undertake a manual review of the Office of Judicial Affairs' files upon your agreement to pay for the reasonable costs thereof.

   <u>Document Request No. 4</u>.  Please see response to your complaints to Penn State's answers to Interrogatory No. 7.

   <u>Document Request No. 5</u>.  Please see Penn State's response to your complaints to Penn State's answers to Interrogatory Nos. 10 and 12.

   <u>Document Request No. 6</u>.  Please see Penn State's response to your complaints to Penn State's answers to Interrogatory No. 13.

   <u>Document Request No. 7</u>.  Please see Penn State's response to your complaints to Penn State's answers to Interrogatory Nos. 10 and 12.

   <u>Document Request No. 8</u>.  We are not aware of any documents, other than those that have been provided, those that will be provided in the supplemental document production, and those which have not been provided on the basis of privilege, which have been considered reviewed or relied upon in preparing interrogatory answers.

### Response to Privilege Log Comments

   <u>Doc Nos. 470 and 471</u>.  Pages 470 and 471 contain E-mail communications between Attorney Jim Horne and The Pennsylvania State University employees, William Asbury, Joseph Puzycki, Gary Schultz, and Janice Jacobs relative to the lawsuit and are therefore privileged.

   <u>Doc Nos. 504 and 505</u>.  Pages 504 and 505 contain communications from Wendell Courtney to Janice Jacobs concerning the issue of housing options for Julia Parker and are therefore privileged.

**McQuaide Blasko**                                              ATTORNEYS AT LAW

Terry Fromson, Esquire
July 17, 2002
Page 6

    <u>Doc Nos. 472 and 473</u>.  Pages 472 and 473 contain a communication from Bill Mahon to Attorneys Mark Faulkner and Allen Neely of McQuaide Blasko as well as to certain Penn State employees concerning the filing of the instant lawsuit and is therefore privileged.

    <u>Doc Nos. 491 and 492</u>.  Pages 491 and 492 is another version of the same information contained in 472 and 473 and is therefore privileged for the same reasons.

    <u>Doc Nos. 509</u>.  Page 509 is an E-mail message from Wendell Courtney to William Asbury, Marybeth Crowe, and Janice Jacobs concerning the Julia Parker situation and is therefore privileged.

    <u>Doc Nos. 534 and 535</u>.  Pages 534 and 535 contain an E-mail from Wendell Courtney to Sabrina Chapman, Graham Spanier, Gary Schultz, Janice Jacobs, William Asbury, Tim Curley and Joseph Puzycki concerning the investigation of Parker and Celestin, and is therefore privileged.

    <u>Doc Nos. 536 and 537</u>.  Pages 536 and 537 contain an E-mail between Gary Schultz at Penn State and attorneys Paul Tomczuk, Mark Faulkner and Wendell Courtney at McQuaide Blasko, copied to Graham Spanier, Janice Jacobs, Joseph Puzycki, Tim Curley, William Asbury and Tom Harmon, and are therefore privileged.

    <u>Doc Nos. 555 and 556</u>.  Pages 555 and 556 contain an E-mail from Janice Jacobs to Graham Spanier containing information concerning the consultation of University counsel relative to the Judicial Affairs process.  These documents are therefore privileged.

    <u>Doc Nos. 560</u>.  Page 560 contains another version of the same E-mail referenced in 555 and 556.

    <u>Doc Nos. 586-838</u>.  It appears that you have already received, or will receive, the vast majority of these documents.  Several, however, are privileged and will not be produced for the reasons set forth below.

    <u>Doc Nos. 586-588</u>.  Pages 586 through 588 contain an E-mail from Joseph Puzycki to Michelle Katz at McQuaide Blasko copied to William Asbury, Janice Jacobs and Stephen MacCarthy and are therefore privileged.

**McQUAIDE BLASKO**                                    ATTORNEYS AT LAW

Terry Fromson, Esquire
July 17, 2002
Page 7

    <u>Doc No. 619</u>.  Page 619 contains a memorandum dated December 3, 2001 to Michelle Katz from Joseph Puzycki copied to Arthur Carter and William Asbury and is therefore privileged.

    <u>Doc Nos. 785-787</u>.  Pages 785 through 787 contain an E-mail from Joseph Puzycki to Michelle Katz and are therefore privileged.

    <u>Doc Nos. 810 and 811</u>.  Pages 810 and 811 contain another version of the E-mail contained on document pages 785 through 787 and are privileged for the same reasons.

    <u>Doc Nos. 812-814</u>.  Pages 812 through 814 appear to be identical to the documents found at 472 through 474 and are therefore privileged for the same reasons.

    <u>Doc Nos. 815 and 816</u>.  Pages 815 and 816 are an E-mail from Bill Mahon to Mark Faulkner and Allen Neely of McQuaide Blasko and to Phil Burlingame, Gary Schultz, Steve MacCarthy, Janice Jacobs, William Asbury, Art Carter, and Joseph Puzycki and are therefore privileged.

    <u>Doc Nos. 817-818</u>.  Pages 817 through 818 are an E-mail from Joseph Puzycki to Mark Faulkner and Allen Neely and also to Phil Burlingame, Art Carter, William Asbury, Janice Jacobs, and are therefore privileged.

    If you have any questions or comments, please feel free to contact our office.

          Very truly yours,

          McQUAIDE BLASKO

          By:         _John A. Snyder_

JAS/sap
Enclosures

# MEDICAL AUTHORIZATION

*TO:*

YOU ARE HEREBY authorized and requested to furnish to James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania, any and all medical records/bills and information within your custody or control regarding the medical condition, treatment, diagnosis and prognosis of **JULIA M. PARKER** which either her physician, a hospital, its agents, servants or employees were consulted relative to any medical services, the nature of physical impairment, history, prescription, x-rays, MRI films/reports, consultation reports from other health care providers, hospital medical records, consent forms, subjective and objective symptoms, and other information which may be available to you, including medical records' summary sheets, incident reports, and invoices of services rendered.  This Authorization may be used to update these records at any time prior to the trial of this matter.  A copy of this Authorization may also be presented.

JULIA M. PARKER

SS# 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

Date of Birth:  6/22/81

Sworn to and subscribed

before me this _____ day

of _____, 2002.

NOTARY PUBLIC
[SEAL]

## **MEDICAL AUTHORIZATION**

*TO:*

YOU ARE HEREBY authorized and requested to furnish to James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania, any and all medical records/bills and information within your custody or control regarding the medical condition, treatment, diagnosis and prognosis of **JULIA M. PARKER** which either her physician, a hospital, its agents, servants or employees were consulted relative to any medical services, the nature of physical impairment, history, prescription, x-rays, MRI films/reports, consultation reports from other health care providers, hospital medical records, consent forms, subjective and objective symptoms, and other information which may be available to you, including medical records' summary sheets, incident reports, and invoices of services rendered.  This Authorization may be used to update these records at any time prior to the trial of this matter.  A copy of this Authorization may also be presented.

_____

JULIA M. PARKER

SS# 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

Date of Birth:  6/22/81

Sworn to and subscribed

before me this _____ day

of _____, 2002.

_____

NOTARY PUBLIC
[SEAL]

# MEDICAL AUTHORIZATION

*TO:*

YOU ARE HEREBY authorized and requested to furnish to James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania, any and all medical records/bills and information within your custody or control regarding the medical condition, treatment, diagnosis and prognosis of **JULIA M. PARKER** which either her physician, a hospital, its agents, servants or employees were consulted relative to any medical services, the nature of physical impairment, history, prescription, x-rays, MRI films/reports, consultation reports from other health care providers, hospital medical records, consent forms, subjective and objective symptoms, and other information which may be available to you, including medical records' summary sheets, incident reports, and invoices of services rendered.  This Authorization may be used to update these records at any time prior to the trial of this matter.  A copy of this Authorization may also be presented.

_____

JULIA M. PARKER

SS# 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

Date of Birth:  6/22/81

Sworn to and subscribed

before me this _____ day

of _____, 2002.

_____

NOTARY PUBLIC
[SEAL]

## **AUTHORIZATION**

Patient's Name:  Julia M. Parker

Date of Birth:  6/22/81

Social Security #: 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

I hereby authorize _____ to release to: James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania 16801, the following medical and/or psychiatric/psychological information which may include drug and alcohol abuse treatment information.

The information to be released is confined to the following:

☒ Recert: attendance, progress on goals, medication, mental status

☒ Legal System Record (i.e., type of program, summary of progress, type/frequency or relapse and prognosis)

☒ Discharge Summary

☒ Prognosis

☒ Diagnosis

☒ Psychosocial History

☒ Physical Exam

☒ Progress Note(s)

☒ Aftercare Plans

☐ Other

☒ Treatment Plans

☒ Clinical Staffing Notes

☒ Consultation Reports

☒ Attendance

☒ Medication record(s)

☒ Admission Note

☒ Progress on objectives

☒ Assessment

I have read and fully understand the above statements as they apply to me.  I consent to the release of my records/information.

_____          _____
Patient's Signature                                              Witness

Date: _____          Date: _____

**A copy of this Authorization shall be deemed valid as original.**
**This Authorization may be used to update these records at**
**any time prior to the trial of this matter.**

# AUTHORIZATION

Patient's Name:  Julia M. Parker

Date of Birth:  6/22/81

Social Security #: 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

I hereby authorize _____ to release to: James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania 16801, the following medical and/or psychiatric/psychological information which may include drug and alcohol abuse treatment information.

The information to be released is confined to the following:

☒ Recert: attendance, progress on goals, medication, mental status

☒ Legal System Record (i.e., type of program, summary of progress, type/frequency or relapse and prognosis)

☒ Discharge Summary

☒ Prognosis

☒ Diagnosis

☒ Psychosocial History

☒ Physical Exam

☒ Progress Note(s)

☒ Aftercare Plans

☐ Other

☒ Treatment Plans

☒ Clinical Staffing Notes

☒ Consultation Reports

☒ Attendance

☒ Medication record(s)

☒ Admission Note

☒ Progress on objectives

☒ Assessment

I have read and fully understand the above statements as they apply to me.  I consent to the release of my records/information.

_____
Patient's Signature

_____
Witness

Date: _____

Date: _____

**A copy of this Authorization shall be deemed valid as original.
This Authorization may be used to update these records at
any time prior to the trial of this matter.**

# **AUTHORIZATION**

Patient's Name:  Julia M. Parker

Date of Birth:  6/22/81

Social Security #: 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

I hereby authorize _____ to release to: James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania 16801, the following medical and/or psychiatric/psychological information which may include drug and alcohol abuse treatment information.

The information to be released is confined to the following:

☒ Recert: attendance, progress on goals, medication, mental status

☒ Legal System Record (i.e., type of program, summary of progress, type/frequency or relapse and prognosis)

☒ Discharge Summary

☒ Prognosis

☒ Diagnosis

☒ Psychosocial History

☒ Physical Exam

☒ Progress Note(s)

☒ Aftercare Plans

☐ Other

☒ Treatment Plans

☒ Clinical Staffing Notes

☒ Consultation Reports

☒ Attendance

☒ Medication record(s)

☒ Admission Note

☒ Progress on objectives

☒ Assessment

I have read and fully understand the above statements as they apply to me.  I consent to the release of my records/information.

_____
Patient's Signature

_____
Witness

Date: _____

Date: _____

**A copy of this Authorization shall be deemed valid as original.
This Authorization may be used to update these records at
any time prior to the trial of this matter.**

## AUTHORIZATION

Patient's Name:  Julia M. Parker

Date of Birth:  6/22/81

Social Security #: 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

I hereby authorize _____ to release to: James M. Horne, Esquire and/or John A. Snyder, Esquire, of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc., 811 University Drive, State College, Pennsylvania 16801, the following medical and/or psychiatric/psychological information which may include drug and alcohol abuse treatment information.

The information to be released is confined to the following:

☒ Recent: attendance, progress on goals, medication, mental status

☒ Legal System Record (i.e., type of program, summary of progress, type/frequency or relapse and prognosis)

☒ Discharge Summary

☒ Prognosis

☒ Diagnosis

☒ Psychosocial History

☒ Physical Exam

☒ Progress Note(s)

☒ Aftercare Plans

☐ Other

☒ Treatment Plans

☒ Clinical Staffing Notes

☒ Consultation Reports

☒ Attendance

☒ Medication record(s)

☒ Admission Note

☒ Progress on objectives

☒ Assessment

I have read and fully understand the above statements as they apply to me.  I consent to the release of my records/information.

_____
Patient's Signature

_____
Witness

Date: _____

Date: _____

**A copy of this Authorization shall be deemed valid as original.**
**This Authorization may be used to update these records at**
**any time prior to the trial of this matter.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | } | No.  4:CV-02-0369 |
| Plaintiff, | } | |
| v. | } | Judge McClure, Jr. |
| | } | |
| THE PENNSYLVANIA STATE | } | Jury Trial Demanded |
| UNIVERSITY, | } | |
| Defendant. | } | Complaint filed: 3-06-02 |

## **DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY'S SUPPLEMENTAL ANSWERS (PER 7/2/02 COURT ORDER) TO PLAINTIFF'S FIRST SET OF INTERROGATORIES DIRECTED TO DEFENDANT**

## **INTERROGATORIES**

1. If you conducted any investigation into an alleged sexual assault Plaintiff reported to you or the police, describe in detail the investigation conducted by Defendant, including without limitation the following:

   a. Identify all persons interviewed.

   b. Identify all Penn State official or others involved in the investigation and state their roles.

   c. Identify all documents gathered.



    d.     Identify all sources of information consulted.

    e.     Describe all remedial steps considered and the reasons each was/was not

        taken.

    f.     Describe in detail the results of the investigation and the conclusions

        reached by Penn State.

    g.     Identify all reports summaries, and other documents that purport to

        summarize the investigation or its return in whole or in part.

**ANSWER:**

    **(c)**    **Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

10.    If Penn State has received any complaint of sexual or other harassment from a student, faculty member, employee, or other person, other than complaints made by Plaintiff, separately with respect to each of the complaints within the scope of the description in that interrogatory, state the following:

    a.     The name of the complaining party and whether the complaining party was a student, faculty member, employee, or other person (and if an "other person" state the relationship of that person to Penn State)

    b.     The nature of the harassment complained of.

    c.     The date(s) when the complaint was received by Penn State.

    d.     The person(s) at Penn State who received the complaint(s).

    e.     The person(s) at Penn State responsible for investigating the complaint(s).

    f.     The person at Penn State responsible for acting upon or taking steps to remedy the complaint(s).

    g.     All steps taken to protect the complaining party from any further or continuing harassment.

    h.     All steps considered but not taken or implemented for the purpose of protecting the complaining party against further harassment and the reason such steps were not taken.

    i.     All steps taken to discipline or punish the harasser.

**ANSWER:**

> **Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

11.   Have you ever taken any of the following steps after receiving a complaint of sexual or other harassment from a student, faculty member, employee, or other person (state yes or no separately for each step listed below and if yes, identify the complaining parties, alleged harasser, and nature of the harassment complained of):

     a.    Suspended the alleged harasser from employment with Penn State or attendance at Penn State as a student.

     b.    Excluded the alleged harasser from any part or all of a Penn State campus.

     c.    Provided a non-student escort to accompany the complaining party to class, work, or university facilities.

     d.    Restricted or monitored the alleged harasser's movement on campus.

     e.    Required the alleged harasser to attend counseling on sexual harassment

     f.    Informed the alleged harasser as to what conduct is appropriate.

     g.    Prohibited retaliation for reporting the alleged sexual harassment.

**ANSWER:**

> **Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

12.   If you are aware of any case in which a person accused of sexual or other harassment was ordered by Penn State to have no further contact with the complaining party for some period of time and subsequently had such contact, directly, or indirectly, in violation of Penn State's instructions not to do so, then separate as to each such case known to you state the following information:

     a.    The identity of the complaining party.

     b.    The identity of the alleged harasser.

     c.    The nature of the harassment complained of

     d.    The date the complaint was received.

     e.    The date the alleged harasser was instructed to cease further contact with the complaining party.

     f.    When and how Penn State learned that its instruction to cease further contact had been disobeyed.

     g.    What steps Penn State took in light of the violation of its instruction, and the reasons for those steps.

**ANSWER**:

**Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other than</u> Nathaniel Parker and/or Jean Celestin.**

13.    If you are aware of any case in which a Penn State student has been subject to criminal charges and bound over in a preliminary hearing, then separate as to each such case known to you state the following information:

     a.    The identity of the student charged.
     b.    The nature of the criminal charges.
     c.    The date of the alleged criminal incident and preliminary hearing.
     d.    Any discipline imposed by Penn State as a result of the alleged criminal incident.
     e.    If no disciplinary action was taken by Penn State, the reason why.
     f.    The date of the disciplinary action taken by Penn State.
     g.    Whether some or all of the discipline was imposed prior to the disposition of the criminal charges, and if so, which disciplinary actions were taken prior to such disposition.
     h.    Whether some or all of the discipline was deferred until prior to the disposition of the criminal charges, and if so, which disciplinary actions were deferred and why.
     i.    The process, if any, leading up to the discipline imposed by Penn State.
     j.    Whether the accuser or victim in the criminal case testified before a Penn State disciplinary body or gave information about the criminal incident in a Penn State investigation prior to the disposition of the criminal charges.

**ANSWER**:

**Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other than</u> Nathaniel Parker and/or Jean Celestin.**

McQUAIDE, BLASKO, SCHWARTZ,
FLEMING & FAULKNER, INC.

Dated:   July 29, 2002

By: _____

James M. Horne
I.D. No. 26908
John A. Snyder
I.D. No. 66295
811 University Drive
State College, PA  16801
(814) 238-4926

Attorneys for Defendant

# McQUAIDE BLASKO

**ATTORNEYS AT LAW**

811 University Drive, State College, Pennsylvania 16801-6699
600 Centerview Drive, Suite 5103, Hershey, Pennsylvania 17033-2903

(814) 238-4926   FAX (814) 234-5620
(717) 531-1199   FAX (717) 531-1193
www.mcquaideblasko.com

Reply to: State College Office

Direct 235-2206

July 29, 2002

Terry Fromson, Esquire
Managing Attorney
Women's Law Project
125 S. Ninth Street, Suite 300
Philadelphia, PA 19107
(Fax: (215) 928-9848)

Re:   <u>Jane Doe v. The Pennsylvania State University</u>, No. 4:CV-02-0369

Dear Ms. Fromson:

Enclosed please find Defendant's Supplemental Answers to Plaintiff's Interrogatories and Defendant's Supplemental Response to Plaintiff's Request for Production of Documents (per Court Order dated July 2, 2002) in the above-referenced matter.

Very truly yours,

McQUAIDE BLASKO

By: _John A. G._

John A. Snyder

JAS/sap
Enclosures

---

McQUAIDE, BLASKO, SCHWARTZ, FLEMING & FAULKNER, INC.

John W. Blasko   Thomas E. Schwartz   Grant H. Fleming   R. Mark Faulkner   David M. Weixel   Steven S. Hurvitz   James M. Horne   Wendell V. Courtney   Darryl R. Slimak   Mark Righter   Daniel E. Bright
Paul J. Tomczuk   Janine C. Gismondi   Maureen A. Gallagher   John A. Snyder   April C. Simpson   Allen P. Neely   Charles Eppolito, III   Katherine V. Oliver   Katherine M. Allen
Wayne L. Mowery, Jr.   Pamela A. Ruest   Michelle S. Katz   Ashley Himes Kranich   Chena L. Glenn-Hart   Richard K. Laws   John H. Taylor   Michael J. Mohr   Livinia N. Jones

John G. Love (1893-1966)   Roy Wilkinson, Jr. (1915-1995)   Delbert J. McQuaide (1936-1997)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | } | No. 4:CV-02-0369 |
| Plaintiff, | } | |
| v. | } | Judge McClure, Jr. |
| | } | |
| THE PENNSYLVANIA STATE | } | Jury Trial Demanded |
| UNIVERSITY, | } | |
| Defendant. | } | Complaint filed: 3-06-02 |

## SUPPLEMENTAL RESPONSE (PER 7/2/02 COURT ORDER) OF DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT

## REQUESTS

1.    All documents that relate, refer, or pertain to the alleged sexual assault reported by

Plaintiff or any investigation Penn State conducted into the alleged sexual assault.

**Response:**

**Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students other than Nathaniel Parker and/or Jean Celestin.**

2.      All documents that relate, refer, or pertain to the criminal charges against Nate Parker or

Jean Celestin, or Penn State's involvement with or inquiry into the same, including

without limitation all communications between any person affiliated in any capacity with

Penn State and any third party relating to those charges.  The latter category includes

without limitation all communications by any person affiliated with Penn State and the

Court pertaining to the charges or sentencing.

**Response:**

**Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

3.      All documents that relate, refer, or pertain to any alleged harassment of Plaintiff by Nate

Parker, Jean Celestin, or others or any investigation by Penn State of such alleged

harassment.

**Response:**

**Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

5.      All documents that relate, refer, or pertain to Penn State's investigation or handling of

any of the complaints of harassment that are the subject of interrogatory numbers 10, 11,

and 12 in Plaintiff's First Set of Interrogatories Directed to Defendant, served

contemporaneously with these requests.

**Response:**

> **Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

6.   All documents that relate, refer, or pertain to the student criminal cases which are the

subject of interrogatory number 13 in Plaintiff's First Set of Interrogatories Directed to

Defendant, served contemporaneously with these requests.

**Response:**

> **Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.**

12.   All files that relate, refer, or pertain to any disciplinary investigation or action involving

Plaintiff, Nate Parker, and/or Jean Celestin, including files relating to disciplinary or

judicial proceedings involving those students, portions of their student files relating to

disciplinary action whether proposed or actual, and any investigation files relating to

disciplinary action whether proposed or actual.

**Response:**

Based upon the Court Order dated July 2, 2002, please see attached Judicial Affairs Office files/documents (Bates # 778-784, 788-809, 819-874, 1050-1240) and Department of Athletics files/documents (Bates #966-1049), Defendant renews and incorporates herein all prior answers and objections, including those objections based upon FERPA pertaining to students <u>other</u> <u>than</u> Nathaniel Parker and/or Jean Celestin.

McQUAIDE, BLASKO, SCHWARTZ, FLEMING & FAULKNER, INC.

Dated:  July 29, 2002

By: _____

James M. Horne
I.D. No. 26908
John A. Snyder
I.D. No. 66295
811 University Drive
State College, PA  16801
(814) 238-4926

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | } | No.  4:CV-02-0369 |
| Plaintiff, | } | |
| v. | } | Judge McClure, Jr. |
| | } | |
| THE PENNSYLVANIA STATE | } | Jury Trial Demanded |
| UNIVERSITY, | } | |
| Defendant. | } | Complaint filed: 3-06-02 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Supplemental Answers to Plaintiff's Interrogatories and Defendant's Supplemental Response to Plaintiff's Request for Production of Documents (per Court Order dated July 2, 2002) in the above-captioned matter was served by U.S. First Class Mail, postage prepaid, on this 29th day of July, 2002, to the attorneys of record:

Terry Fromson, Esquire
Carol Tracy, Esquire
David S. Cohen, Esquire
Women's Law Project
125 S. Ninth Street, Suite 300
Philadelphia, PA 19107
(215) 928-9801

David F. Abernethy, Esquire
Drinker, Biddle & Reath, LLP
One Logan Square, 18th & Cherry Sts.
Philadelphia, PA 19103
(215) 988-2503
(Additional Counsel for Plaintiff)

McQUAIDE, BLASKO, SCHWARTZ,
FLEMING & FAULKNER, INC.

By:_____

James M. Horne
I.D. No. 26908
John A. Snyder
I.D. No. 66295
811 University Drive
State College, PA  16801
(814) 238-4926

Attorneys for Defendant



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANE DOE,                          :

    Plaintiff,                 :    Civil Action

                    :

    vs.                        :    No. 4:02-CV-0369

                    :

PENNSYLVANIA STATE                 :    Judge McClure, Jr.
UNIVERSITY,                        :

    Defendant.                 :

**FILED**
**WILLIAMSPORT, PA**

MAY 3 1 2002

MARY E. D'ANDREA, CLERK
Per_____
                DEPUTY CLERK

## ORDER

AND NOW, this *31st* day of *May*, 2002, the terms and provisions of

the attached Stipulation for the Entry of Order Regarding Confidential Information

Disclosed in Discovery are approved and made an Order of this Court.

                  BY THE COURT


Dated *May 31*, 2002

RECEIVED
Williamsport, Pa.

MAY 2 4 2002

MARY E. D'ANDREA, Clerk
PER _____
DEPUTY CLERK

FILED
WILLIAMSPORT, PA

MAY    4 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| vs. | : | No. 4:02-CV-0369 |
| | : | |
| PENNSYLVANIA STATE | : | Judge McClure, Jr. |
| UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

## STIPULATION FOR ENTRY OF ORDER REGARDING CONFIDENTIAL INFORMATION DISCLOSED IN DISCOVERY

IT IS HEREBY STIPULATED AND AGREED, by and between

Plaintiff, Jane Doe, and Defendant, Pennsylvania State University, that the Court

may enter an Order in the above-captioned action that provides as follows:

1.    This Order governs the handling of documents, depositions,

deposition exhibits, interrogatory answers, and other written, recorded, or graphic

material (Discovery Material) that is produced by or obtained from any party in connection with this action and that are designated confidential by the party providing that material. The term "Discovery Material" shall include any materials produced in connection with this litigation, whether involuntarily, voluntarily, formally, informally or otherwise.

2.     Either Plaintiff or Defendant may designate as confidential any Discovery Material produced in this case, to the extent it contains non-public information as to which the producing party has a reasonable basis to maintain confidentiality, including but not limited to confidential medical records and information and confidential internal communications. All Discovery Material designated as confidential pursuant to this Order and all information derived from such confidential materials is referred to collectively in this Order as "Confidential Discovery Material" and shall be handled in accordance with this Order.

3.     The restrictions in this Order on the use and disclosure of "Confidential Discovery Material" do not apply to:

(a)     Information or materials that, before their disclosure in discovery in this case, were lawfully in the possession of the receiving party or its counsel under no obligation of confidentiality to the opposing party.

(b)     Information or materials that, after their disclosure in discovery in this case, are lawfully received by the receiving party from any other source that

2

has the right to make such disclosure to the receiving party or its counsel without an obligation of confidentiality.

4.      Documents and other tangible material shall be designated as Confidential Discovery Material by marking or stamping them "Confidential." With respect to multi-page documents that contain confidential discovery information, the designation shall be stamped on each page of the document for which confidentiality is asserted.

5.      Plaintiff or Defendant may, by notice prior to a deposition, or on the record at a deposition, or by written notice sent within 10 days after receipt of a deposition transcript, designate all or any portion of the deposition as "Confidential Discovery Material" under this Order.  Until that 10-day period has expired, all deposition transcripts shall be treated as if they constitute Confidential Discovery Material.  Designations shall be limited to material that is legitimately confidential; an entire deposition may not be designated confidential where only portions of it are nonpublic and entitled to confidential treatment.  All copies of deposition transcripts that contain Confidential Discovery Material shall be marked "Confidential" on the cover thereof and on each page so designated.

6.      Any party that seeks to file Confidential Discovery Material with this Court shall do so under seal, unless permitted by the Court to do otherwise after notice to the party asserting confidentiality and hearing of any objections by that

party. Nothing in this paragraph shall operate to preclude any party from reliance upon Confidential Discovery Material in motions, briefs, or other filings made in, or in arguments presented to, the Court in this matter.

7.     Confidential Discovery Material shall be used only for the prosecution and/or defense of this action or any appeal from decisions by this Court in this action. Under no circumstances, other than those specifically provided for in this or subsequent Orders, or except with the producing party's consent, shall Confidential Discovery Material or its contents be revealed, disclosed or otherwise made known to any person other than the following:

(a)     the parties;

(b)     litigation counsel or other counsel engaged in representing the parties, and any regular or temporary employees of such counsel who are assisting in the conduct of this action;

(c)     the Court, consistently with paragraph 6 of this Order;

(d)     court reporters employed in connection with the litigation, provided that no disclosure shall be made to any such court reporter before his or her compliance with paragraph 8 of this Order;

(e)     experts or consultants retained for the purpose of testifying, consulting, or otherwise assisting in the prosecution or defense of this action,

provided that no disclosure shall be made to any such expert or consultant before his or her compliance with paragraph 8 of this Order; and

(f)    witnesses who are deposed in this action, or who appear at any hearing or trial in this action, but only to the extent that such disclosure occurs in preparation for or during their testimony in such deposition or hearing, only to the extent that such disclosure is reasonably necessary for the preparation of or testimony by that witness, and provided that no such disclosure shall be made to any such witness before his or her compliance with paragraph 8 of this Order.

8.    Any person given access to Confidential Discovery Material pursuant to paragraph 7(d) through (f) of this Order first shall be advised by counsel for the party providing such access that the material or information is confidential, that it is being disclosed pursuant to the terms of this Order, and that it may not be disclosed except in accordance with this Order.  Furthermore, prior to disclosure of any Confidential Discovery Material to any court reporter, expert, consultant, or witness pursuant to paragraph 7(d) through (f) of this Order, each such person first shall read this Order and sign a copy of the Confidentiality Agreement attached to this Order as Exhibit A, by which he or she agrees (i) to be bound by the terms and conditions of this Order; (ii) to consent to the jurisdiction of this Court for purposes of enforcement of this Order; and (iii) to refrain from disclosure or use of such material or information for purposes other than this action.  A copy of the

signed Confidentiality Agreement shall be retained by counsel for the party making

disclosure to the reporter, expert, consultant, or witness and shall be shown to

counsel for the producing party upon good cause shown. Any person who has

been given access to Confidential Discovery Material prior to the execution of this

Order shall immediately comply with this paragraph 8.

     9.    Inadvertent production of any information, document, or thing without

it first being marked "Confidential" shall not be deemed a waiver of any claim of

confidentiality as to such matter, provided that the producing party has exercised

reasonable care generally in the review and production of the relevant documents

and information and provided that the producing party acts promptly after

discovery of the error to designate the material as confidential. The information,

document, or thing then may be designated as Confidential Discovery Material and

thereafter shall be treated as such, provided however, that the receiving party shall

not be liable or sanctioned for any disclosure that occurred prior to the belated

designation or for any subsequent disclosure that is beyond the receiving party's

control.

     10.    The production of materials or compliance with the terms of this

Order shall not prejudice the right of any party to object to the production of

documents that it believes are not subject to discovery; to seek a determination by

the Court that particular discovery materials should be produced; or to apply to the

Court for a further protective order relating to any confidential information or to modify or amend the terms of this Order.

11. Any party shall have the right to challenge the confidential status of any Confidential Discovery Material by motion to this Court. The receiving party shall treat all such materials or information in accordance with this Order during the pendency of such motion. The parties agree that before seeking any relief from the Court under this paragraph they will make a good faith effort to resolve between them any disputes concerning the confidential treatment of any information.

12. After the termination of this proceeding, this Order shall continue to be binding upon the parties hereto and upon all persons to whom Confidential Discovery Material has been disclosed or communicated. This Court shall retain jurisdiction over the parties and all such persons for enforcement of its provisions.

13. Upon conclusion of this litigation, all Confidential Discovery Material, all documents reflecting such material, and all copies thereof shall be returned to the producing party or, in the alternative, shall be destroyed and certified in writing to have been destroyed. Work product of counsel containing Confidential Discovery Material may be retained by counsel; however, the terms of this Order shall continue to apply to such materials as long as they are retained.

Terry L. Fromson
Women's Law Project
125 S. 9th Street, Suite 300
Philadelphia, PA  19107
(215)928-9801 ext. 203

James M. Horne
McQuaide Blasko Law Offices
811 University Drive
State College, PA  16801
(814)235-2206

# CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2002, I caused to be served a true and correct copy of the foregoing Stipulation for Entry of Order Regarding Confidential Information Disclosed in Discovery upon the following by U.S. First Class mail, postage prepaid:

James M. Horne
McQuaide Blasko
811 University Dr.
State College, PA  16801-6699
*Attorney for Defendant*

David S. Cohen
Women's Law Project
125 S. Ninth St.  Suite 300
Philadelphia, PA  19107
(215) 928-9801

EXHIBIT A TO

<u>STIPULATED ORDER REGARDING CONFIDENTIAL INFORMATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| vs. | : | No. 4:02-CV-0369 |
| | : | |
| PENNSYLVANIA STATE | : | Judge McClure, Jr. |
| UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

AGREEMENT TO COMPLY WITH CONFIDENTIALITY ORDER

I, _____, hereby certify that I have read the

Stipulation for the Entry of Order Regarding Confidential Information Disclosed in

Discovery and the order approving that stipulation and making it an order of the

Court in the above-captioned matter (Order); that I agree to be bound by the terms

Exhibit A

and conditions of the Order; that I consent to the jurisdiction of this Court for

purposes of enforcement of the Order; and that, consistent with the terms and

conditions of the Order, I will not disclose or use Confidential Discovery Material,

as defined in the Order, except as set forth in the Order or for any purposes other

than the prosecution, defense, or appeal of this action.


_____


Dated: _____

Terry L. Fromson, Esq.
Women's Law Project
125 S. 9th Street
Suite 300
Philadelphia, PA  19107


        Re: 4:02-cv-00369

        ------------------------------



        ------------------------------

Please file all pleadings directly with the Clerk's Office in which
the assigned Judge is located.  Do not file any courtesy copies
with the Judge's Chambers.

JUDICIAL OFFICERS:                      CLERK'S OFFICE ADDRESS:

Chief Judge Thomas I. Vanaskie          U.S. District Court
Judge A. Richard Caputo                 235 N. Washington Ave.
Judge James M. Munley                   P.O. Box 1148
Judge William J. Nealon                 Scranton, PA  18501
Judge Richard P. Conaboy
Judge Edwin M. Kosik
Magistrate Judge Thomas M. Blewitt
Magistrate Judge Malachy E. Mannion

-----------------------------------------------------------------------
Judge Yvette Kane                       U.S. District Court
Judge Sylvia H. Rambo                   228 Walnut Street
Judge William W. Caldwell               P.O. Box 983
Magistrate Judge J. Andrew Smyser       Harrisburg, PA  17108


-----------------------------------------------------------------------

Judge Malcolm Muir                      U.S. District Court
Judge James F. McClure                  240 West Third Street
                                        Suite 218
                                        Williamsport, PA  17701